**COMMERCIAL CREDIT CORPORATION,**
Appellant,

v.

**Henry J. CHASTEEN et ux., Appellees.**

**No. 17947.**

Court of Civil Appeals of Texas,
Fort Worth.

April 13, 1978.

Rehearing Denied May 11, 1978.

Garrett & Burkett and Michael R. Burkett, Fort Worth, for appellant.

Staples & Foster and Ross T. Foster, Hurst, for appellees.

## OPINION

SPURLOCK, Justice.

This is a usury case. Henry J. Chasteen and his wife (appellees) purchased a mobile home from Big Country Homes, Inc. on October 5, 1973, and signed a retail installment contract. All the terms in the retail installment contract were controlled and inserted by Commercial Credit Corporation (CCC—appellant) for its benefit. After a nonjury trial, the trial court ruled that appellant charged interest and time-price differential in excess of double the amount allowed by law. The trial court rendered judgment against CCC in the amount of $32,561.45, which included attorney's fees.

We modify the judgment of the trial court, and as so modified, the judgment is affirmed.

In its first point of error, CCC contends that the trial court erred in holding that it charged a usurious rate of interest. In its argument under this point of error, it contends that the "notice of private sale" letter sent to the Chasteens constitutes the sole basis for the claim that it charged a usuri-

ous rate of interest. (Appellees argue that the "notice of sale" letter does not constitute the sole basis of their claim.) The following is a part of this letter:

### NOTICE OF PRIVATE SALE

Description of Goods    1973 Vintage M/H – Srl. # LVT52632

Date Repossessed    12–2–74

Dear Customer:

This is to notify you that on or after 12–12–74 the above described goods will be sold at Private Sale, at this address, pursuant to the terms of the Security Instrument you signed and the Uniform Commercial Code for the State of Texas which provides for the sale and disposition of the goods by a Secured Party following default by a debtor. You may recover the goods before the sale only if you make payment of the unpaid balance to us of $23137.58 plus the expenses incurred by us in retaking, holding and preparing the goods for disposition and the attorney's fees and legal expense. If you do not redeem the collateral, it will be sold to the highest bidder and the proceeds of the sale will be applied to your account.

Under the terms of the Security Instrument, you will receive any proceeds in excess of the amounts owed by you and you will be held responsible for any deficiencies sustained if the proceeds are less than the amounts owed by you.

> Sincerely yours,
> /s/ D. Weaver
> D. Weaver
> Branch Manager

Dewey L. Weaver, branch manager for CCC, testified that one of the reasons for sending out the "notice of sale" letter is to advise people of their legal responsibility.

By the terms of the retail installment contract, CCC extended credit to the Chasteens in the amount of $13,087.00. The Chasteens were to repay this sum, together with a finance charge of $11,777.48, in 144 monthly installments of $172.69 each. The Chasteens made ten monthly payments prior to their default and the peaceful repossession of their mobile home by CCC.

In the event of default, the retail installment contract provides:

"If Purchaser defaults on any obligation or breaches any agreement or warranty under this Security Agreement, or if Sell-

er in good faith, believes that the prospect of payment or performance by Purchaser is impaired, the unpaid portion of the Total of Payments, shall, without notice, at the option of Seller, become due forthwith."

The evidence established that the "unpaid portion of the total of payments" was equal to the total amount financed plus the total finance charge, less any payments made by the Chasteens. The evidence also established that the seller assigned all of its rights under the retail installment contract to CCC and that all the terms in the retail installment contract had been controlled and inserted by CCC.

In the event of prepayment, the retail installment contract provides:

"Upon prepayment, Purchaser is entitled to a rebate of the FINANCE CHARGE (Item 10) computed in accordance with the Rule of 78. An acquisition charge of $25.00 will be deducted from the FINANCE CHARGE before making the Rule of 78 computation."

The retail installment contract does not provide for a rebate in the event of default. Mr. Weaver, the branch manager for CCC, testified that Mr. Chasteen would have to come in and pay off the indebtedness in order to constitute prepayment.

After the Chasteens' default and CCC's repossession, CCC accelerated the Chasteens' obligation, pursuant to its right under the retail installment contract.

At the same time that the December 2, 1974 "notice of sale" letter was sent to the Chasteens, CCC sent a voluntary report to Credit Bureau Services, which report said that the amount owing by the Chasteens was $23,137.58. We note that this is the same amount contained in the "notice of sale" letter sent to the Chasteens.

In summary, we emphasize the following facts. (1) In the event of default, under the terms of the retail installment contract, CCC had the right to accelerate and demand payment of all the unpaid principal and finance charge contracted for, both earned and unearned. (2) The terms

of the notice of sale letter make it clear that CCC was exercising its rights under the retail installment contract, one of which was to charge and collect unearned interest upon acceleration. (3) CCC sent a letter to the credit bureau, which notified them that the Chasteens owed it $23,137.58. (4) At the time that CCC accelerated the Chasteens' obligation, the Chasteens had had the use of the $13,087.00 less than fifteen months, for which they were charged interest in excess of $10,000.00. We hold that CCC charged the Chasteens usurious interest, in an amount in excess of twice the amount allowed by law. *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.). We overrule CCC's first point of error.

■ By its second point of error, CCC contends that the trial court erred by awarding damages to the Chasteens that are in excess of the proper measure of damages allowed by law. In its discussion of this point, CCC raises a number of complaints. Although its argument is multifarious, we have considered each of its complaints under this second point of error. One of CCC's arguments is to the effect that the trial court erred in its award of attorney's fees to be paid to the Chasteens in the event of an appeal. By its calculations in the judgment, the trial court awarded the Chasteens the following attorney's fees: (1) $2000.00 through judgment, (2) $2000.00 for an appeal to the Court of Civil Appeals, (3) $500.00 for application for a writ of error to the Supreme Court, and (4) $500.00 if an application for writ of error is granted by the Supreme Court. The judgment further ordered the Chasteens to file a remittitur in one of the following amounts: (1) $500.00 if an application for writ of error is refused by the Supreme Court, (2) $1000.00 if no application for a writ of error is filed in the Supreme Court, or (3) $3000.00 if no appeal is taken to the Court of Civil Appeals.

CCC cites us to the case of *King Optical v. Auto. Data Processing, Etc.*, 542 S.W.2d 213 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.), where the court wrote:

"The awards of attorneys' fees in this case in the event of appeals by the appellant are unconditional and do not purport to turn upon whether or not the appellant succeeds in the appellate courts. The awards are improper." *Id.* at 218.

In affirming the trial court's judgment with certain modifications, the Court of Civil Appeals deleted the award of attorney's fees from the judgment. We do not consider the *King Optical, supra*, case to be controlling, in view of our Supreme Court's opinion in the case of *International Security Life Insurance Co. v. Spray*, 468 S.W.2d 347, 348 (Tex.1971), which addresses the problem of how to draft a judgment providing for attorney's fees in the event of appeal. In that case, our Supreme Court wrote:

"A final judgment must be definite and certain, but this certainly is not dissipated simply because the district clerk has to compute costs to add to the amount of the judgment or to deduct a remittitur that is ordered. So long as the judgment of the court makes the figure which the clerk is to place in the writ of execution determinable by ministerial act, the judgment cannot be said to lack definiteness.

. . .

"The point is that the clerk of court is faced with no greater problem in subtracting a $500 attorney fee, when the papers on file with him show that no application for writ of error was made to the Supreme Court, than he would have in adding a $25 court cost filing fee. *Furthermore, the form of the judgment is not the controlling matter here so long as certainty is achieved. . . .*" (Emphasis added.) *Id.* at 350.

We agree with the opinion of our Supreme Court in *International Security Life Insurance Co., supra*. We hold that the trial court did not award damages to the Chasteens in excess of the amount of damages allowed by law. We overrule CCC's second point of error.

By their first cross-point of error, the Chasteens contend that the trial court erred in failing to conclude as a matter of law

that CCC contracted for interest in excess of twice the amount allowed by law. By their second cross-point of error, they contend that the trial court erred in failing to award them twice the amount of interest contracted for.

The Chasteens' argument is thus: if they had defaulted in their first installment payment, CCC would contractually have been entitled to collect from them $13,-087.00 as principal and $11,777.48 as interest, because of the acceleration clause. Thus, they argue that under Tex.Rev.Civ. Stat.Ann. art. 5069–8.01(a) (Supp.—1978), they were entitled to an interest penalty of twice the amount of interest "contracted for, charged or received," or $23,554.96, rather than the $20,408.02 awarded by the trial court as an interest penalty. We agree with the Chasteens' argument. We sustain the Chasteens' first and second cross-points of error. The Chasteens' total recovery shall be increased by $3,146.94. We shall render the judgment that the trial court should have rendered. Tex.R.Civ.P. 434.

We render judgment that the Chasteens have judgment against Commercial Credit Corporation for $35,708.39, plus interest at 9% per annum from March 1, 1977, the date of the judgment by the trial court, until paid. As so modified, the judgment of the trial court is affirmed.

We have only considered the specific points raised by the parties in their briefs; we express no opinion as to whether or not the Chasteens were entitled to additional damages for CCC's violations of the Texas usury laws.