**NORTHWEST BANK, Appellant,**

v.

**Joe E. COUIE, et ux., Appellees.**

**No. 2–82–001–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 18, 1982.

Rehearing Denied Dec. 16, 1982.

Day, Nabers & Smith, Slagle & Haney, and G. Lee Haney, Brownwood, for appellant.

Wynn, Brown, Mack, Renfro & Thompson, and J.L. Haley, III, Fort Worth, for appellees.

Before MASSEY, C.J., and RICHARD L. BROWN and HUGHES, JJ.

## OPINION

MASSEY, Chief Justice.

Northwest Bank, holder of a promissory note, sued the makers of the note, Joe and Jane Couie, alleging that $7077.42 remained due and owing. The Couies filed a counterclaim against the Bank under the Consumer Credit Code, art. 5069–4.02(1) (1971), "Insurance," alleging the Bank to be in violation thereof because it had caused to be issued more than one credit life insurance policy covering its obligors. The Couies moved for partial summary judgment on their counterclaim. The Bank filed in response thereto affidavits claiming that the premiums charged the Couies for two credit life insurance policies were identical to those which would have been charged had there been issued but one policy. The trial court granted the motion and awarded the Couies $1690.42, being twice the amount of interest contracted by them in the note. Art. 5069–8.01(b)(ii) (Supp.1982) "(Penalties)—Contracting for, etc.; failure to perform duty or committing prohibited act, etc.". Thereafter, the Couies moved for final judgment because the Bank had admitted that it no longer made claim for the final payment under the note because it had allowed the credit life policies to expire prematurely. The trial court rendered judgment for the Couies, accompanied by ruling that no material issue of fact remained which would preclude entry of final judgment for Consumer Credit Code violations. Therefrom, Northwest Bank has appealed.

We affirm.

We are presented with two points of error. First, the Bank contends the trial court erred in ruling that its harmless violation of art. 5069–4.02(1), the single credit life insurance policy provision, triggered the penalty provisions of the Credit Code, art. 5069–8.01. Second, the Bank contends the Couies should have been estopped from asserting any violations of the Credit Code on the part of the Bank due to their own conduct in accepting benefits under both policies of insurance, which benefits effectively paid their obligations under the promissory note.

When faced with an appeal from judgment, a portion of which is under Tex.R. Civ.P. 166–A, "Summary Judgment", we must presume that all facts raised by the Bank are true, but that all issues not expressly presented by written motion to the trial court have been waived. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). The facts material to our disposition will be recited accordingly.

On May 19, 1976, Joe Couie (now deceased) executed in favor of Northwest Bank a promissory note in the sum of $7890.30 ($6750.00 as a "cash advance", $845.21 included as the Bank's "finance charge"), payable in eighteen monthly installments of $438.35 each. The note provided for interest from default at the rate of ten percent per annum, plus attorney's fees if collection became necessary. Found within the note is a provision whereby Couie opted for credit life and disability insurance, with the charge for such coverage being included ($295.09). The note was secured by a security interest in four motor vehicles. Jane Couie, wife of Joe, signed the note and guaranteed payment thereof.

Northwest Bank then sought to obtain insurance policies to cover Joe Couie. They caused to be issued a policy with First Unit-

ed Life Insurance Company, with Bank named as creditor beneficiary. This policy provided for term premiums of $147.54 and potential monthly benefits of $219.17. An identical policy was taken out with Transport Life Insurance Company. The two policies, taken together, provided for premiums totalling $295.09 and monthly benefits of $438.34 in the event of Couie's disability. The reason given by Bank for the two policies, with splitting of premiums and coverage (and accepted as fact by this court), is that First United would not issue (for reasons known only to it) any policy to provide an amount of monthly disability benefits for any debtor in excess of $250.00 per month. In mitigation of its actions in seeking and obtaining two policies rather than a single policy, Bank shows that the premiums for the two policies are exactly the same as the premium would have been had there been only one policy issued. We find this to be true.

During the term of the Couies' obligations to Bank, Joe Couie became disabled. The insurance companies thereafter sent to the Bank checks in satisfaction of the Couies' monthly obligations. The Bank was the named payee on the monthly checks.

The final payment under the $7890.30 promissory note was due in December, 1977. The insurance coverage was for eighteen months, the same term as the note, but it lapsed in November, 1977, leaving one $438.35 monthly payment (December, 1977) unpaid and not covered by insurance.

March 31, 1978, Bank filed suit against Joe and Jane Couie. Alleged was that $7072.42 remained unpaid on the promissory note. As the case developed, and after the Couies had made claim for penalties under the Consumer Credit Code, the Bank admitted that its claim against the Couies under the note amounted to only $438.35, and it then abandoned any demand—as made in its suit—due to its own error in allowing the term of insurance to expire.

Following partial summary judgment for the Couies on their counterclaim under the Consumer Credit Code, final judgment was rendered against Bank on its claim based on the promissory note.

Prior to submission of the cause to this court, the Bank in their brief had taken issue with the trial court's entry of final judgment on the note by contending impropriety of same as a final summary judgment rendered in absence of motion therefor by the Couies. The record discloses that the Couies' motion for partial summary judgment on its counterclaim, which was granted, was followed by their motion for final judgment after the Bank admitted in affidavit filed as part of the record that it would no longer pursue its suit to recover on the note. Any procedural irregularities preliminary to final judgment are therefore immaterial. Remaining are questions of the propriety of the trial court's interpretation of the relevant sections of the Consumer Credit Code, art. 5069–4.02(1) (1971), and art. 5069–8.01(b)(ii) (Supp.1982).

By way of further clarification: the issue before us on appeal, as we view it, does not truly concern the question of whether the trial court's entry of final judgment against Bank on the Couie's counterclaim was improper because there existed a dispute concerning whether or not Bank's violation of the Consumer Credit Code was unintentional and the result of bona fide error (notwithstanding Bank's maintenance of procedures reasonably adopted to avoid such violations). Art. 5069–8.01(f)(1) (Supp.1982). In its answer, the Bank did allege such defense, but in its affidavit which was in response to the motion of the Couies, the Bank merely explained its reasons for splitting credit life and disability insurance. Bank presented no proof whatever, and therefore abandoned its statutory defense. Tex.R.Civ.P. 166–A(e) ("Form of Affidavits; Further Testimony); 4 R. McDonald, Texas Civil Practice, sec. 17.26.8 "Summary Judgment—Reply to Motion—Contents" (1971). In addition the point was not briefed.

■ By reason of our holding, above explained, is left Bank's contention: Bank's bona fide error defense notwithstanding, the Couies have nowhere alleged nor proven a violation of the Consumer Credit Code.

Put in other words, the question is: did Bank's act of causing to be issued, or allowing to be in force, more than one policy of credit life, health and accident insurance (sec. 4.02(1)) trigger the remedial provisions of the Consumer Credit Code (sec. 8.01(b)(ii))? We hold that it did.

Art. 5069–4.02(1) provides:

"On any loan made under the authority of [Chapter 4—'Installment Loans'], a lender may request or require a borrower to provide credit life insurance and credit health and accident insurance as additional protection for such a loan. *Only one policy of life insurance and one policy of health and accident insurance on any one obligor may be in force with respect to any one loan contract at any one time.*" (Emphasis supplied).

Art. 5069–8.01(b) provides:

"Any person who violates this Subtitle or Chapter 14 of this Title by (i) failing to perform any duty or requirement specifically imposed on him by any provision of this Subtitle or Chapter 14 of this Title, or by (ii) committing any act or practice prohibited by this Subtitle . . . for a penalty in an amount equal to twice the time price differential or interest contracted for, charged, or received, but not to exceed $2,000 in a transaction in which the amount financed is $5,000 or less, and not to exceed $4,000 in a transaction in which the amount financed is in excess of $5,000 and reasonable attorneys' fees fixed by the court."

By a point of error, Bank contends the trial court erred in its interpretation of art. 5069–4.02(1), because there is no showing that the article imposes a specific duty upon the bank, as required by art. 5069–8.01(b).

In reply the Couies assert that they are entitled to their statutory award of twice the interest on indebtedness because the Bank committed an "act or practice prohibited by" Subtitle Two ("Interest") of art. 5069. (Supp.1982) (formerly designated "Consumer Credit").

Bank's reliance on the superseded version of art. 5069–8.01, *see* Acts 1967, 60th Leg., p. 656, ch. 274, sec. 2, is misplaced. Where the old version required that lender must be shown to have failed to perform a duty specifically imposed on it, the amended (1977) version of sec. 8.01(b) triggers the penal sanctions merely when prohibited acts are proven. Art. 5069–4.02(1) is within the Subtitle for the purpose of imposition of penalties.

Bank contends that sec. 4.02(1) uses permissive language, that only one policy of insurance "may" be in force. Clearly, in the context of the language used by the legislature, the word "may" does not have permissive connotations. The statutory declaration that "only one policy may be in force" is tantamount to saying "more than one may not be in force". Other language found in sec. 4.02 makes it evident that the legislature was mapping out options which lenders may, but are not required to pursue, and certain acts in the observance of which lenders have no such option. For example, under sec. 4.02(1) a lender "may request or require" a debtor to provide credit life insurance, but a lender is not required to do so. The lender may "request or require a borrower to insure tangible personal property offered as security as a loan", sec. 4.02(2), but clearly no lender is required to do so. In contrast to these optional acts of lenders, the proscription against more than one policy of insurance, found in sec. 4.02(1), cannot be said to be merely directive in nature. The language is mandatory, leaving no right of option.

Bank next contends there is no guidance in sec. 4.02(1) to determine exactly who the legislature intended to punish in the event double insurance coverage on a debtor comes into existence. Could the borrower obtain more than one policy and then turn around and file suit against his lender? Is the insurance company which issued the second policy liable under sec. 4.02 and sec. 8.01?

We are not faced with a hypothetical situation; instead we are confronted with a lending institution charged with violating a statute which delineates differences between certain kinds of prohibited and per-

missible lending conduct, and which proscribes penalties for commission of prohibited acts. The legislative intent behind the statute under consideration, generally Title 79, art. 5069–1.01 through 50.01 (1971), was to protect Texas citizen from "abusive and deceptive practices" which might be perpetrated by "unscrupulous operators, lenders, and vendors in both cash and credit consumer transactions". Clearly lending institutions, such as the Bank in this case, were contemplated objects of the statute and, equally clearly, debtors in the position of the Couies were the class members sought to be protected against prohibited conduct of the former. This answers the material question posed in the paragraphs preceding; those relative to liability of insurance companies or others not being necessary to decide.

Bank further contends that it has not violated the Consumer Credit Code because the total of the premiums charged by the two insurance companies would be identical to the premium which would have been charged had there been issued only one policy of credit life insurance. Because of this, according to Bank, the Couies were not in any way injured by the acts of the Bank in causing two policies to be issued. This contention is without merit. It is equity Bank seeks to inject into the case. We are without authority to apply equitable principles to the situation for it is controlled by statutory law.

■ The penalty provision of the Consumer Credit Code, art. 5069–8.01 (Supp. 1982), gives relief to debtors in the form of twice the amount of interest contracted, charged or received by persons falling within the purview of the statute. The legislature has directed the courts to impose such penalty when any act or practice has been committed which is prohibited by the statute (sec. 8.01(b)(ii)) and it has chosen to deter lenders or creditors from taking out more than one policy of credit life, health and accident insurance by including such a provision in the statute (sec. 4.02(1)). The potential for abuse is apparent. More than one policy of insurance could produce income for lenders in excess of a debt owed. If the courts of this state were swayed by Bank's "harmless violation" argument, private enforcement of the Consumer Credit Code would be deterred, and consumers would be forced to meet a defense that has not been provided. The defenses available to lenders are limited. We do not find that courts are empowered to expand them by judicial caveat. The paramount purpose of the statute is to encourage private litigants to redress evils addressed. Furthermore, actual damages were not necessary items of proof to be made by the Couies in order to recover under the Code. *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 254–255 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Ford Motor Credit Co. v. Blocker*, 558 S.W.2d 493, 498 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

■ Bank contends the trial court erred in holding as a matter of law that the Couies were entitled to recover for violations of art. 5069–4.02(1) when they should have been estopped from raising such complaint because they permitted the insurance companies to effectively retire their obligation under the note.

Both Bank and the Couies have benefitted from the two policies of insurance. The Bank was repaid monies lent to the Couies, and the Couies, in turn, had their financial obligation to the Bank lifted from their shoulders by their foresight in opting for credit life and disability insurance. The only detriment to Bank in this situation is the imposition of statutory penalties under art. 5069–8.01. Bank, having itself chosen the two insurance companies which issued credit policies, and having been the named payee on all disability checks covering the Couies' indebtedness, was in a superior position to discover error or to avoid statutory liability. *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d 834, 838 (Tex.1968). Estoppel will not lie in this case.

Judgment is affirmed.