Estella P. VELA, Appellant,

v.

YATES FORD, INC., et al., Appellees.

No. 04–82–00433–CV.

Court of Appeals of Texas,
San Antonio.

June 6, 1984.

Second Rehearing Denied July 2, 1984.

Thomas M. Schumacher, Hector Gonzalez Law Office, Corpus Christi, for appellant.

Rick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, Kenneth Oden, Jr., Perkins, Oden, Warburton, McNeill & Adami, Alice, Lee Rosenthal, Randall A. Hopkins, Baker & Botts, Houston, Henry H. Robinson, Attorney General's Office, Austin, for appellees.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

*On Appellees' Motion for Rehearing*

REEVES, Justice.

Our prior opinion is withdrawn and the following substituted therefore.

This is an appeal from an adverse judgment in a suit by appellant, Estella P. Vela, against Yates Ford, Inc. and Ford Motor Credit Company, appellees, denying appellant recovery under the Texas Consumer Credit Code, TEX.REV.CIV.STAT.ANN. art. 5069–1.01 *et seq.*,[1] as it relates to motor vehicle installment sales. Art. 5069–7.01, *et seq.*

On May 26, 1979, appellant purchased a 1979 Ford Futura from appellees. In conjunction with this sale, appellant signed a contract entitled "Texas Automobile Retail Instalment Contract," which was subsequently assigned by Yates Ford, Inc. to Ford Motor Credit Company.

At some later point in time, appellant filed suit alleging numerous defects in the contract. From a judgment in favor of appellees, appellant brings this appeal.

■ Appellant, in her first point of error, contends the trial court erred in failing to render judgment for appellant because the evidence showed, as a matter of law, that the contract contained a provision in which appellees contracted for the right to receive charges in excess of those permitted by the Consumer Credit Code.

The complained of provision in the contract states: "Seller shall have the right to retain all payments made prior to repossession." Appellant's argument hinges on the fact that the Consumer Credit Code requires, upon pre-payment, a refund of any unearned finance charge. Art. 5069–7.04. Appellant asserts that if the debtor prepaid the contract and the vehicle was repossessed, the above quoted language in the

---

1. There is no Consumer Credit Code within the meaning of the statutory revision program. TEX.REV.CIV.STAT.ANN. art. 5429b–1 (Vernon Supp.1982–1983). Art. 5069–1.01 *et seq.* is, however, commonly referred to as the Texas Consumer Credit Code and all references herein, unless otherwise noted, are to TEX.REV.CIV. STAT.ANN. art. 5069–1.01 *et seq.* (Vernon 1971 and Vernon Supp.1984).

contract provides that no unearned interest would be refunded. This argument suffers from two fatal flaws.

First, in order for appellant's contingency to arise, the contract must be pre-paid. The contract in question states that if the buyer does pre-pay, he "shall receive a rebate of the unearned portion of the Finance Charge." Thus, the contract specifically provides for a rebate in the event of pre-payment.

Second, the provision which appellant finds offensive is one which applies in the event of repossession. We cannot contemplate a situation under this contract absent accident or mistake, in which a creditor would repossess a vehicle after the debtor had pre-paid the contract. Additionally, we note the contract does not provide the right of partial pre-payment but provides, "Buyer may prepay ... in full at any time.... "

Appellant, in support of point of error one, cites this Court to only one case, *Commercial Credit Corp. v. Chasteen*, 565 S.W.2d 342 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). *Chasteen* is not on point. The contract in *Chasteen* stated that in the event of default, "the unpaid portion of the *Total of Payments*, shall ... become due forthwith." *Id.* at 344. (Emphasis ours). Additionally, the creditor in *Chasteen* had demanded the total amount of payments due with no allowance for any unearned finance charge.

The identical provision before us was upheld in *Carbajal v. Ford Motor Credit Co.*, 658 S.W.2d 281, 284 (Tex.App.—Corpus Christi 1983, writ dism'd w.o.j.), and we agree with the reasoning in that opinion. Appellant's first point of error is overruled.

Appellant's second point of error contends the trial court erred in failing to render judgment for appellant because the evidence showed appellees contracted for, charged and received a time price differential in excess of the maximum permitted by article 5069–7.03. We agree.

The contract was executed May 26, 1979. The amount financed was $6,507.80 with a finance charge of $1,744.78 added to this amount. The first payment was due July 10, 1979, and herein lies the problem.

Since the first payment of the contract does not fall due exactly one month from the date of the contract, there are extra "odd days" on which appellees are allowed to charge a finance charge by virtue of article 5069–7.03(2), which states the charge is computed "from the date of the contract until the maturity of the final installment.... "

Appellant and appellees have two disagreements concerning these "odd days": how many "odd days" are there, and how is the finance charge calculated on the "odd days"?

TEX.REV.CIV.STAT.ANN. art. 5069–2.-01(j) (Vernon 1971) states: " 'Month' means that period of time from one date in a calendar month to the corresponding date in the following calendar month.... " Thus, if the first payment on the contract before us was to be due in one month, that date would be June 26th. The payment is not due, however, until July 10th. This results in fourteen (14) "odd days," the actual number of days from June 26th until July 10th being fourteen.

Appellees contend the number of odd days is computed by counting the actual number of days as provided for by Appendix J of Regulation Z. 12 C.F.R. § 226 Appendix J (1983).

Using this method there are fifteen "odd days" rather than fourteen. *See* 12 C.F.R. § 226 Appendix J(b)(5)(ii) (1983).

Appellees, as an appendix to their motion for rehearing, have attached a letter from the consumer credit commissioner which reads as follows:

In your letter of October 9, 1981, you referenced Appendix J of Regulation Z which prescribes a method of measuring the time period in the first payment term for the purpose of calculating the Annual Percentage Rate (APR). You then asked the following question as it relates to credit transactions made pursuant to Subtitle II of the Texas Credit Code, Article 5069, V.T.C.S.

"May that same method be used by Texas Creditors for calculating interest or time price differential, as applicable?"

*As you know, it has consistently been the position of this Office that the number of "odd-days" should be determined by counting the number of days beyond (on the farther side) one month from the contract date to the first scheduled instalment due date.* For example, in a transaction that was made on February 25, 1981 with a first instalment due date scheduled for April 1, 1981, the first payment period consists of one (1) month plus seven (7) days based on the method we have advocated for counting the extra ("odd") days in the first payment period. "Month" is defined in Article 2.01(j) of the Credit Code and in part, states that a month "... means that period of time from one date in a calendar month to the corresponding date in the following calendar month ... " In the example given, the period from February 25 to March 25 is one (1) month; the number of actual days from March 25 to April 1 is seven (7).

According to Appendix J of Regulation Z, a first payment period from February 25 to April 1 consists of one (1) month plus four (4) days. The extreme variance in the number of days in this instance is obviously caused by the month of February having only twenty-eight (28) days. As you know, the four (4) odd-days are produced by considering the full month to be the period from April 1 to March 1, and the actual number of days from March 1 to February 25 is four (4). *In our view the method of counting odd-days as prescribed by this Office is one that is consistent with the definition of a month and other provisions of the Code* and its validity should be continued to be recognized even though the procedure prescribed in Regulation Z for disclosure purposes is in conflict with that method.

We have given your question considerable thought and have concluded that the method prescribed in Appendix J of Regulation Z of counting odd-days for APR disclosure purposes is an acceptable *alternative* [emphasis in original] method for counting odd-days for interest calculation purposes under the Texas Credit Code under the following conditions.

Any creditor who adopts the method prescribed by Regulation Z should utilize the method consistently as to all applicable credit transactions initiated by the creditor.

When the aforementioned method is utilized by a creditor, the number of odd-days produced will be considered by this Office to be controlling to determine whether an otherwise monthly payment transaction is a "regular" or "irregular" transaction under Chapters 3 and 4 of the Code. If the application of the method produces more than fifteen (15) odd-days, the transaction will be considered "irregular." [Emphasis ours.]

 Since our legislature has provided a method for determining the number of "odd days," we believe that procedure should be followed. We hold that the number of "odd days" is determined by counting the number of days beyond (on the farther side) one month from the contract date to the first scheduled installment due date.

The question then becomes what is the maximum finance charge allowed, and how is it calculated?

Both parties agree that Art. 5069–7.03 controls the amount of the maximum finance charge. Both parties also agree that if there were no "odd days," this amount would be controlled by Art. 5069–7.03(1), and would be calculated as follows: $7.50 × the amount financed divided by one hundred [2] × the number of monthly payments

2. The amount financed must be divided by 100 in order to determine the number of hundred

dollar increments as the formula is $7.50 *per one hundred dollars* per annum.

divided by twelve.[3] ($7.50) × ($6,507.80 ÷ 100) × (42 ÷ 12). This amount equals $1,708.30. To this amount, the finance charge for the fourteen "odd days" must be added to determine the total finance charge allowed by law. Art. 5069–7.03(2).

The disagreement between appellant and appellees arises in determining which subsection of art. 5069–7.03 controls the calculation of the finance charge for the "odd days"; subsection (1) or (4).

Appellant contends that art. 5069–7.03(1) controls the calculation of the odd day's finance charge, reasoning as follows:

TEX.REV.CIV.STAT.ANN. art. 5069–2.-01(j) (Vernon 1971) provides that "when computations are made for a fraction of a month a day shall be one-thirtieth of a month." Therefore, the remaining finance charge for the fourteen "odd days" is for a time period of 14 ÷ 30 which must then be converted from a monthly to an annual figure. This is accomplished by dividing the fraction by twelve; 14/30 ÷ 12 in this case or .0389 years. In other words, 14 days is the equivalent of .0389 years.

TEX.REV.CIV.STAT.ANN. art. 5069–7.-03(1) still controls the maximum charge, according to appellant, that being $7.50 per $100.00 per annum. TEX.REV.CIV.STAT.ANN. art. 5069–7.03(3) (Vernon 1971) states, "[f]or a period less ... than twelve months ... the amount of the maximum finance charge ... shall be decreased or increased proportionately."

Since there are fourteen additional "odd days" which amount to .0389 years, the finance charge may be increased proportionately. This amount, appellant contends, would be determined in the following manner: $7.50 per $100.00 per annum or (7.50) × ($6,507.80 ÷ 100) × (.0389 years) which equals $18.99.

The maximum finance charge would then be determined by adding the maximum charge for 42 months ($1,708.30) to the maximum charge for the fourteen "odd days" ($18.99). Thus, the maximum fi-

nance charge on the contract, under appellant's argument, is $1,727.29.

■ Appellees contend, and we agree, that Art. 5069–7.03(4) controls this calculation. The reason being that art. 5069–7.-03(1) controls only those contracts which are "payable in substantially equal successive monthly installments *beginning one month after the date of the contract ... "* Art. 5069–7.03(1) (emphasis added), and does not control the situation where the first payment is not due one month from the date of the contract.

■ Article 5069–7.03(4) provides as follows:

(4) If a retail installment contract is payable other than in substantially equal successive monthly installments, as where payable in irregular or unequal installments either in amount or periods thereof, or in equal successive monthly installments followed by or interspersed with an irregular, unequal or larger installment or installments, or in other than monthly installments or *if the first installment is not payable one month from the date of the contract, the charge may not exceed an amount which, having due regard for the schedule of installment payments, will provide the same effective return as if the contract were payable in substantially equal successive monthly installments beginning one month from the date of the contract.* [Emphasis ours.]

The critical language in subsection (4) is *"the same effective return."* Appellees strenuously argue, and we agree, that "effective return" and "annual percentage rate" (APR) are synonymous.

It would follow then, that the charge for the "odd days" cannot exceed the annual percentage rate of the contract if the contract were payable in substantially equal monthly installments beginning one month from the date of the contract.

**3.** The number of monthly payments must be divided by twelve in order to determine the

number of years as the formula is $7.50 per one hundred dollars *per annum.*

■ To determine the maximum finance charge allowed by art. 5069–7.03(4), one must first determine the annual percentage rate or effective return of the contract if it were payable in substantially equal monthly installments beginning one month from the date of the contract, which amount is controlled by art. 5069–7.03(1). In the case at bar this is $7.50 per $100.00 per annum or a maximum finance charge of $1,708.30. ($7.50 × 65.0780 × 3.5). $7.50 per $100.00 per annum is the equivalent of a 7.5% add-on interest rate. The coinciding annual percentage rate or effective return for a 7.5% add-on rate over 42 months is 13.60%.[4] Therefore, under Art. 5069–7.03(4), the maximum charge for the "odd days" may not exceed an annual percentage rate of 13.60%. To determine this amount, the annual percentage rate must be converted to a daily rate. This is accomplished by dividing the APR by 365. (13.60% ÷ 365). This daily rate is then multiplied by the number of "odd days," which in turn is multiplied by the amount financed.[5] Applying this to the case at bar results in the following: (13.60% ÷ 365) × (14) × ($6,507.80) which results in a maximum charge for the "odd days" of $33.95. This amount ($33.95) is then added to the amount which is allowed if the contract were payable in substantially equal monthly installments beginning one month from the date of the contract, ($1,708.30) for a total maximum finance charge of $1,742.25.

Appellees charged $1,744.78 as a finance charge on the contract before us. As calculated above, the maximum charge allowed is $1,742.25. This is an overcharge of $2.53.

Having found a violation of the Consumer Credit Code, we must now determine whether the doctrine of *de minimis non curat lex* is applicable. We hold that it is not.

■ *De minimis non curat lex* is the proposition that the law does not concern itself with trifles. In 1 AM.JUR.2D *Actions* § 67 (1962), it is stated: "It is only where the gist of the action is damages that the maxim applies at law." We agree with this statement. A suit to recover statutory penalties for a violation of the Consumer Credit Code under article 5069–8.01, is not remedial in nature but is purely penal. *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198 (Tex.), *dismissed mem.*, 454 U.S. 1074, 102 S.Ct. 623, 70 L.Ed.2d 607 (1981). As this Court stated in *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.), "[t]he penalty provision is not designed to compensate the consumer for actual damages but instead is to deter violators and to encourage enforcement of the Code by private litigants. ... " *Id.* at 254. Indeed, no actual damages are required to recover the penalties provided for under the Code. *Zapata v. Ford Motor Credit Co., supra; Northwest Bank v. Couie*, 642 S.W.2d 847, 851 (Tex.App.—Fort Worth 1982, no writ). It would thus seem incongruous to deny a consumer recovery because his damages, which are not an element of his cause of action, are *de minimis.*

Neither are we inclined to deny the consumer recovery for a *de minimis* violation of, or a substantial compliance with, the Code. The Legislature, in adopting the Code, stated part of its purpose was: "to regulate credit sales, and place limitations on charges imposed in connection with such sales ... and to provide firm and effective penalties for usury and other prohibited practices." TEX.REV.CIV.STAT.ANN. art. 5069, Declaration of Legislative Intent (Vernon 1971).

While it is true that there are cases which deny recovery under the doctrine of *de minimis,* we believe such holdings frus-

---

4. Several tables are readily available to convert an add-on interest rate to a simple or annual percentage rate. *See e.g.,* 1 Board of Governors of the Federal Reserve System, Truth in Lending Regulation Z Annual Percentage Rate Table.

5. This may be summarized by the following formula:

$$\frac{(APR) \times (Number\ of\ ``odd\ days") \times (amount\ financed)}{365}$$

trate the express intent of the statute and leave the consumer without the remedy contemplated by the legislature. For cases denying recovery, *see, Thornhill v. Sharpstown Dodge Sales, Inc.*, 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ); *see also Lundquist Buick-Opel, Inc. v. Wikoff*, 659 S.W.2d 466 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Hight v. Jim Bass Ford, Inc.*, 552 S.W.2d 490 (Tex. Civ.App.—Austin 1977, writ ref'd n.r.e.).

■ While this result might seem harsh, it must be remembered that the creditor need only follow the statute to avoid the penalties. We hold that appellant is entitled, as a matter of law, to recover twice the time price differential contracted for plus a reasonable attorney's fee. Art. 5069–8.01(a).[6]

■ Appellant, in her third point of error, contends appellees failed to give appellant the option, for a period of five days from the date of the retail installment contract, of furnishing the required physical damage insurance either through existing policies of insurance owned by appellant or of procuring equivalent insurance through any insurance company authorized to do business in Texas, pursuant to article 5069–7.06(3).

At the time relevant to this litigation, article 5069–7.06(3) read as follows:

(3) When insurance is required in connection with such a contract or agreement made under this Chapter, the seller or holder shall furnish the borrower a statement which shall clearly and conspicuously state that insurance is requested or required in connection with the contract, and that the buyer shall have the option of furnishing the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas. In addition when any requested or required insurance is sold or procured by the seller or holder at a premium or rate of charge not fixed or approved by the State Board of Insurance, the seller or holder shall include such fact in the foregoing statement, and the buyer shall have the option for a period of five days from the date of the contract or agreement of furnishing the required insurance coverage either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas. Such statement or statements may be made in conjunction with or as part of the retail installment contract required by Article 7.02.

TEX.REV.CIV.STAT.ANN. art. 5069–7.-06(3) (Vernon 1971).

In the case at bar, the contract disclosed that physical damage insurance was required; that appellant had the option of furnishing the required insurance through existing policies; and that the insurance which appellees purchased for appellant had a premium which was at a rate of charge not fixed or approved by the State Board of Insurance.

---

6. We note that art. 5069–8.01(f) provides:

(f) A person may not be held liable in any action brought under this Article for a violation of this Subtitle or Chapter 14 of this Title if such person shows by a preponderance of evidence that (1) the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation or that (2) the violation was an act done or omitted in good faith in conformity with any rule, regulation, or interpretation of this Title by any state agency, board, or commission, or with the federal Consumer Credit Protection Act (15 U.S.C. Section 1601 et seq.) or with any rule, regulation, or interpretation thereof by any federal agency, board, or commission, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

There was no evidence presented below of either defense under subdivision (f) and it may not now be raised for the first time on appeal. *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 827 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

Appellant contends the contract falls short of the statutory mandate in that it failed to disclose that appellant had the option to, within five days from the date of the contract, cancel the insurance procured by appellees and furnish her own insurance. We disagree.

The statute states that in the event the procured insurance is at a premium or rate of charge not approved by the State Board of Insurance, the buyer shall have the *option* for a period of five days from the date of the contract to furnish his own insurance. The statute does not require this option to be disclosed. There is no showing that appellant did not have the option required by the statute. Appellant's third point of error is overruled.

Appellees' motion for rehearing is overruled. The judgment of the trial court is reversed and the cause is remanded to the trial court with instructions that appellant be awarded twice the amount of time price differential contracted for plus an amount which the trial court determines is a reasonable attorney's fee.