Willie Carl **STARNESS, Appellant,**

v.

**GUARANTY BANK, Appellee.**

No. 20986.

Court of Appeals of Texas, Dallas.

April 15, 1982.

Rehearing Denied May 28, 1982.

Arthur Blanchard, Craig Murrin, DeHay & Blanchard, Dallas, for appellant.

W. Ted Minick, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellee.

Before CARVER, SPARLING and STEPHENS, JJ.

CARVER, Justice.

Willie Carl Starness appeals from a judgment, rendered after a non-jury trial, denying his claims against Guaranty Bank based on usury and violations of the consumer credit statutes. We affirm.

Starness concedes that the facts are not in dispute and he only challenges the legal result of those facts as found by the trial court. The trial court's findings of fact follows:

1. On November 9, 1976 Plaintiff obtained a loan of $75,237.00 from Defendant and in connection therewith signed a promissory note dated November 9, 1976 payable to the order of defendant in the principal amount of $75,237.00 bearing interest thereon at 9% per annum (the "1976 Note").

2. Plaintiff received the use and benefit of $75,237.00 out of proceeds of the loan evidenced by the 1976 Note and used such funds to purchase the Charlie Brown Club.

3. In connection with the 1976 Note, Plaintiff covenanted to purchase a certificate of deposit in the amount of $40,000.00 from Guaranty Bank, which was pledged against Plaintiff's indebtedness to Guaranty Bank, including the 1976 Note.

4. Plaintiff purchased the $40,000.00 certificate of deposit with the money held by Plaintiff in his savings account which money was obtained from sources other than the proceeds of the 1976 Note.

5. Certificate of deposit bore interest which was compounded and credited to the certificate of deposit.

6. The funds received by Guaranty Bank from Plaintiff's purchase of the certificate of deposit were a part of the general deposits of the bank and were used by the bank in the ordinary course of its business to make loans to other borrowers and for other investments, in accordance with generally accepted banking practice and procedure.

7. On May 25, 1977, Plaintiff executed a note in the principal amount of $69,370.80 payable to the order of the Defendant bearing interest at the rate of 9% per annum (the "1977 Note") to evidence the renewal of the loan evidenced by the 1976 Note.

8. With respect to the 1977 Note, Plaintiff had the use and benefit of $69,370.80.

9. On February 27, 1979 Plaintiff executed a note in the principal amount of $70,000.00 payable to the order of Defendant bearing interest at 13% per annum (the "1979 Note") to evidence the renewal of the loan evidenced by the 1977 Note and a further advance of funds by Defendant to Plaintiff in the amount of $23,138.44.

10. With respect to the 1979 Note, Plaintiff had the use and benefit of $70,000.00.

11. The $40,000.00 certificate of deposit was carried forward as collateral for the 1977 and 1979 Notes.

12. Plaintiff made monthly installments of $1,600.00 representing principal and interest payments on the loans evidenced by the 1976, 1977 and 1979 Notes from December 1976 until June 1980 at which time Plaintiff defaulted in the payment of the installment due that month and failed to pay any further installments on such notes.

13. On September 4, 1980, after demand and acceleration, the Defendant offset the $40,000.00 certificate of deposit and accrued interest against the debt of Plaintiff to Defendant at which time the amount of said certificate of deposit and accrued interest was $49,273.40.

14. On January 6, 1981, Plaintiff paid to the Defendant $12,728.24 representing $1,500.00 attorney's fees and $11,228.24 as the principal and interest remaining due on the 1979 Note after the offset of the $49,273.40 represented by the certificate of deposit.

15. Defendant accepted the $12,728.24 in satisfaction of the indebtedness remaining due on the 1979 Note and dismissed its counterclaim in this action.

16. The 1979 Note evidences a loan payable in consecutive monthly installments, substantially equal in amount.

17. The interest charged to Plaintiff by Defendant on the 1979 Note was less than 8% add-on interest.

18. Plaintiff did not plead, prove or offer any evidence of any consumer credit code violations with respect to the 1979 Note.

19. (XIV—Tr. 66) Plaintiff has failed to prove that Defendant charged, contracted for or received usurious interest with respect to the 1976, 1977 and 1979 Notes.

20. (XV—Tr. 66) The $40,000.00 certificate of deposit had an actual value to Plaintiff and was eventually returned to Plaintiff via application to the principal and interest due on the 1979 Note.

21. (XVI—Tr. 66) On November 4, 1976 Plaintiff executed a note and security agreement in connection with the purchase of a garden tractor payable to the order of the Defendant in the amount of $2,187.36 having an APR of 14.79% per annum. (The "Garden Tractor Note")

22. (XVII—Tr. 66) The Garden Tractor Note was paid in accordance with its terms and no attorney's fees or unearned interest was paid by or charged to Plaintiff.

■ Starness first complains that, because he was required to put his own funds in a certificate of deposit as security for his loan, he did not get the use of his full loan proceeds, but the use of a lesser amount (loan proceeds less amount of deposit). Consequently, Starness argues that the interest should be tested for usury against the lesser amount. Starness relies upon *First State Bank v. Miller*, 563 S.W.2d 572 (Tex.1978), to support his position, however, *Miller* involved a different set of facts. In *Miller* the loan was $70,000 but only $56,000 thereof was disbursed to the borrower, consequently the court held that the "true principal" was only $56,000 for the purpose of testing whether the interest charged was usurious. In this instance, Starness does not deny that the full loan proceeds were disbursed to him. Neither does Starness deny that his certificate of deposit was made from funds other than the loan proceeds. Further, Starness concedes that, other than serving as security, the certificate of deposit, and its earned interest, belonged to him as much as the savings account, and its earned interest had belonged to him before its withdrawal for use in purchasing the certificate of deposit. Starness' argument reduced to simplicity, is that the principal of a loan, fully disbursed to the borrower, is, nevertheless, reduced by the security given therefor for the purpose of testing for usury. *Miller* does not so hold and Starness has cited us to no authority so holding; consequently, we reject this complaint. We hold that the "true principal" of a loan, fully disbursed, is not reduced by the value of the debtor's property pledged to secure the loan, regardless of the nature of the pledged property. *See, e.g., Bradley v. Houston State Bank*, 588 S.W.2d 618 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (loan fully disbursed but compensating balance from borrowers' other funds); *Loomis v. Blacklands Prod. Credit Ass'n*, 579 S.W.2d 560 (Tex.Civ.App. —Waco 1979, writ ref'd n.r.e.) (stock of lender purchased with part of loan proceeds and stock pledged to lender); *Texas Int'l. Mort. Co. v. Crum Co.*, 564 S.W.2d 421 (Tex. Civ.App.—Dallas 1978, writ ref'd n.r.e.) (certificate of deposit from third party purchased with part of loan proceeds and certificate pledged to lender).

■ Starness also complains that the trial court excluded his evidence that he originally only sought to borrow $35,000 from the bank and was, somehow, "required" to make the transaction actually made. Starness argues that, while such evidence would ordinarily not be admissible under the rule excluding prior negotiations of the parties, this evidence was admissible, under an exception to the rule in usury cases, to show "the evil substance behind the fair form" of the transaction actually consummated. The record reflects that Starness went to trial on pleadings claiming the $40,000 certificate was purchased with the loan proceeds. When the evidence revealed the certificate

was purchased with Starness' own funds, Starness sought leave, and was permitted, to amend his pleadings accordingly. In no pleading did Starness urge any "evil substance" in support of which the tendered evidence might have been admissible under the stated exception. We hold that the trial court properly excluded the evidence of prior negotiations between the parties.

■ Starness next complains that the note he executed in 1979 ("1979 Note" in the findings of the trial court), bearing an interest note of 13% on its face, was usurious because 10% was the maximum rate, not "8% add-on" as the bank claimed. The bank relies upon Article 5069–4.01(1) Tex. Rev.Civ.Stat.Ann. (Vernon 1971), since amended, which provided:

(1) Any bank or savings and loan association or credit union doing business under the laws of this State or of the United States, and any person licensed to do business under the provisions of Chapter 3 of this Subtitle relating to regulated loans may contract for and receive on any loan made under the authority of this Chapter repayable in consecutive monthly installments, substantially equal in amount, an add-on interest charge, of Eight Dollars per One Hundred Dollars per annum for the full term of the loan contract.

Starness concedes that the bank was a lender authorized to make such an installment loan; that his loan was repayable in substantially equal, consecutive monthly installments; and that the recited 13% rate was not greater than the $8.00 per $100 add-on charge permitted. Nevertheless, Starness argues that, since the note did not reflect the specific computation mentioned in art. 5069–4.01(2), the loan was not an "installment loan." Subsection (2) provided:

(2) Interest authorized in Section (1) of this Article shall be computed on the cash advance at the time the loan is made for the full term of the loan contract notwithstanding the requirement of the loan contract for payment in substantially equal regular installments and shall be computed on the basis of a full month for any fractional period in excess of fifteen days. Interest authorized by Section (1) of this Article shall be added to the cash advance and said sum shall be the amount of the loan.

Starness reasons that subsection (2) required that the note reflect the "amount of the loan" as sum of the cash advance and the add-on interest, whereas the bank's note reflected the cash advance and the true interest as separate amounts. We reject this argument as exalting form over substance. Our courts have consistently rejected "mere form" or "labels used" in favor of the substance of the parties actual transaction as gained from the agreement and the attendant circumstances. See Espinoza v. Victoria Bank & Trust Co., 572 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In our case, since the substance of the parties transaction was an "installment loan" authorized by art. 5069–4.01(2), we hold that the "form" used did not change the "substance" of the loan.

■ Starness additionally complains that the trial court failed to grant him any relief on his note for his garden tractor, even though the court found that interest in excess of the maximum allowed had been charged by the bank. The record supports the calculation of the trial court that the interest on this note of $2,187.36 payable in 36 monthly installments produced an excess interest 21 cents a month or $7.56 for the life of the loan. The trial court also found that such excess was so insignificant as to deny relief thereon under the legal theory of de minimis, that is, beneath the notice of the court. This legal theory has been applied in a variety of cases by Texas courts and we find the theory properly applied by the trial court in this instance. See Grant v. Friendly Chrysler-Plymouth, Inc., 612 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); Ford Motor Credit Co. v. Long, 608 S.W.2d 293 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); Morris v. Jordan Financial Corp., 564 S.W.2d 180 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r. e.); Miller v. Gibralter Sav. & Bldg. Ass'n.,

132 S.W.2d 606 (Tex.Civ.App.—Beaumont 1939, writ dism'd. judgm't. cor.); *Peightal v. Cotton States Bldg. Co.*, 25 Tex.Civ.App. 390, 61 S.W. 428 (1901, no writ). In *Peightal* the court observed, and we agree, that the very insignificance of the excess charge tends to disprove usury because a lender with a usurious intent would hardly be content with so little.

■ Starness further complains that neither his garden tractor note nor his Mustang note affirmatively stated that unearned interest would be refunded if the bank accelerated the notes. Starness relies generally on art. 5069–4.01(6), Tex.Rev.Civ. Stat.Ann. (Vernon 1971) to support his position. While subsection (6) requires a refund or credit for unearned interest when the debtor does not use the time contemplated for repayment, we fail to find therein a provision requiring that an affirmative statement to the same effect be reflected in the note itself. We hold that while *obedience* to subsection (6) is required, *recitation* of intended obedience is not so required.

■ Lastly, Starness complains that the notes he signed for the garden tractor and for the Mustang allowed the bank to collect interest on attorney's fees and collection costs while art. 5069–4.01(7), Tex.Rev.Civ. Stat.Ann. (Vernon 1971), forbids any such charge. The provision in each note is the same and states:

> Reimbursement of expenses—At Secured Party's option, Secured Party may discharge taxes, liens, interest, or perform or cause to be performed for and in behalf of Debtor any actions and conditions, obligations or covenants which Debtor has failed or refused to perform and may pay for the repair, maintenance, and preservation of Collateral and all sums so expended, including but not limited to attorney's fees, court costs, agent's fees, or commissions, or any other costs or expenses shall bear interest from the date of payment at the rate of 10% per annum and shall be payable at the place designated in the above described note and

shall be secured by this Security Agreement.

Art. 5069–4.01(7) provides:

> (7) In addition to the authorized charges provided in this Chapter no further or other charge or amount whatsoever shall be directly, or indirectly charged, contracted for, or received. This includes (but is not limited by) all charges such as fees, compensation, bonuses, commissions, brokerage, discounts, expenses and every other charge of any nature whatsoever, whether of the types listed herein or not. Without limitation of the foregoing, such charges may be any form of costs or compensation whether contracted for or not, received by the lender, or any other person, in connection with (a) the investigating, arranging, negotiation, procuring, guaranteeing, making, servicing, collecting or enforcing of a loan; or (b) for the forbearance of money, credit, goods or things in action; or (c) for any other service or services performed or offered. However, the prohibition set out herein shall not apply to amounts actually incurred by a lender as court costs, attorney fees assessed by a court, lawful fees for filing, recording, or releasing to any public office any instrument securing a loan; the reasonable cost actually expended for repossessing, storing, preparing for sale, or selling any security; or fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for a loan made under this Chapter, or premiums or identifiable charge received in connection with the sale of insurance authorized under this Chapter.

The proscription in subsection (7) is directed to charges made by the lender to the debtor in making or collecting his installment loan while the note provision is directed to the expense the bank may, at its option, separately advance to protect its, and Starness', security from third party claims. Starness is unable to point out any proscription in subsection (7) that would prevent the bank from making a non-installment loan to Starness, or charging interest therefor, when the new loan's purpose was to pre-

serve the security pledged against strangers. We hold that subsection (7) does not prohibit Starness from undertaking, within his installment note, to repay to the bank its expenses, with interest, incurred in protecting the security given for the installment note.

Affirmed.