David **GAWLIK** and Audrey
**Gawlik, Appellants,**

v.

**PADRE STAPLES AUTO MART,**
INC., **Appellee.**

No. 13–82–284–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 13, 1983.

Rehearing Denied Dec. 1, 1983.

Rehearing Granted in Part and
Overruled in Part Dec. 1, 1983.

Second Motion for Rehearing
Denied Jan. 19, 1984.

162

Paul Dodson, Corpus Christi, for appellants.

Kenneth R. Hannam, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a take-nothing judgment. Trial plaintiffs—appellants—cross-appellees, David and Audrey Gawlik (hereinafter appellant) filed suit against trial defendant—appellee—cross-appellant, Padre Staples Auto Mart (hereinafter appellee) for violations of the Texas Consumer Credit Code Tex.Rev.Civ.Stat.Ann., art. 5069–7.01, et seq. (Vernon Supp.1982) and the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) Tex.Bus. Com.Code Ann. § 17.50 et seq. (Vernon Supp.1982), in connection with the purchase of two motor vehicles. Appellee counterclaimed for violations of the DTPA, with regard to David Gawlik's work as a mechanic, such work being applied, as per agreement, in lieu of cash as payment for the vehicles. Trial was to a jury in the County Court at Law. A take-nothing judgment was entered as to both parties. Appellant brings forth two points of error and appellee brings forth one point of error.

■ In late January, 1980, appellant purchased, from appellee, a 1971 Ford Mustang. The purchase is evidenced by an agreement to purchase and order, or "worksheet," dated January 28, 1980, and a Motor Vehicle Contract dated January 29, 1980. The "worksheet" both names and is signed by Audrey J. Gawlik, as purchaser. The Motor Vehicle Contract names Audrey J. Gawlik, as buyer, but is signed by Mattahias David Gawlik, as buyer. In February, 1980, appellant purchased from appellee a 1973 Chrysler station wagon. This purchase is evidenced by an agreement to purchase and order, or "worksheet," dated February 13, 1980. This "worksheet" both names and is signed by David Gawlik, as purchaser. Appellant's first point of error contends that irregularities in these documents entitle them to relief under the Texas Consumer Credit Code as a matter of law, and that the trial court's failure to so rule constitutes error. Appellant's alleged irregularities in the documents related to the purchase/sale of the Ford Mustang are as follows:

1. The contract did not contain a specific statement that liability insurance coverage was not included for bodily injury and property damage to others (Article 5069–7.02(3));

2. The contract was not signed by the buyer, Audrey Gawlik (Article 5069–7.02(1)); and

3. The contract charged more than the allowable time price differential on the vehicle pursuant to Article 5069–7.03. The overcharge was One Dollar and Sixty Two Cents ($1.62).

Appellant further contends that the document introduced in the record dealing with the purchase/sale of the Chrysler station wagon violates the Texas Consumer Credit Code, because:

1. There was no statement that liability insurance coverage for bodily injury and property damage was not included (Article 5069–7.02(3));

2. The contract was not signed by Audrey Gawlik (Article 5069–7.02(1));

3. The contract did not contain in boldface print a notice pursuant to Article 5069–7.02(2) to the following effect: "NOTICE TO BUYER—DO NOT SIGN

THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES ....";

4. No annual percentage rate was stated;

5. The number, amount and due dates or periods of payments scheduled to repay the indebtedness was not stated;

6. The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payment was not stated;

7. No description or identification of the type of any security interest held or to be retained by the creditor was stated;

8. No identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of the obligation was stated; and

9. No itemization of the charges for taxes, title, transfer and license was stated.

We have closely examined the document introduced at trial dealing with the purchase/sale of the Chrysler station wagon and conclude that it does not qualify as a "Retail Installment Contract" as defined by the Texas Consumer Credit Code. Art. 5069–7.01(e), supra. states: " 'Retail Installment Contract' or 'Contract' means a contract entered into in this State *evidencing a retail installment transaction.*" Art. 5069–7.01(d) states: " 'Retail Installment Transaction' or 'Transaction' means any transaction as a result of which a retail buyer acquires a motor vehicle from a retail seller under a retail installment contract for a sum consisting of the cash price and other charges as limited by this chapter *and agrees with a retail seller to pay part or all of such sum in one or more deferred installments.*" (emphasis added).

While the document in evidence does provide for the payment of a finance charge, in addition to a cash price, it does not provide for the payment of all or part of the sum in one or more deferred installments. As such, it does not properly "evidence" a "Retail Installment Transaction." The only reference to payment, on the face of the document, is a handwritten notation in the blank space following the heading "Name," under the designation "Lienholder," which states "Cash & Work out PSAM." This notation is not sufficient to set forth a required payment, of any amount, in any type of deferred installments. While there are facts in the record that indicate that this document was never intended to act as a retail installment contract, such evidence need not be set forth since the document before us does not contain those requisites set out in the Code for Retail Installment Contracts, and therefore, does not, as a matter of law, constitute a "Retail Installment Contract." It follows that the document need not contain those disclosures required of a Retail Installment Contract under the Code.

■ Plaintiff's exhibit No. 2, the "Motor Vehicle Contract" dealing with the purchase/sale of the Ford Mustang does constitute a "Retail Installment Contract" under the Code and must, therefore, meet the requirements set out therein. With regard to this contract, appellant first complains that the contract does not "specifically disclaim the inclusion of liability insurance, contrary to § 7.02(3)." Contained in the contract is the provision that "I completely understand there is **NO INSURANCE** of any kind included in **THIS CONTRACT.**" Appellant does not contend that this provision fails to meet the ten-point bold type requirement, and no evidence was presented in this regard. See *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.)). We hold that by setting forth that "NO INSURANCE" was provided for in "THIS CONTRACT," appellant was on notice that liability insurance coverage for bodily injury and property damage caused to others was not included in the contract.

■ Appellant next contends that the contract is in violation of art. 5069–7.02(1) because it was not signed by Audrey Gawlik, but rather was signed by her husband David Gawlik. The contract names Audrey J. Gawlik as buyer at the top of the contract. Audrey J. Gawlik is also named in

one other place in the contract. Mattahias David Gawlik signed the contract, as buyer, directly below a provision stating: **"BUYER ACKNOWLEDGES RECEIPT OF A TRUE COPY OF THIS NOTE AND CONTRACT."** Below the space where David Gawlik signed as buyer was another space also entitled Buyer. This second space was left blank. Handwritten at the bottom of the contract is the statement: "Substitute Work for Padre Staples Auto Mart for Cash Payment." The record establishes: 1) that the Mattahias David Gawlik that signed the contract is the husband of the Audrey J. Gawlik named in the same contract; 2) that both Audrey J. Gawlik and David Gawlik went together to look at the car and take it for a test drive; 3) that they used a "Duster" as a trade-in; and, 4) that David Gawlik would provide mechanic work for appellee until such time as the remainder of the purchase price was paid off. Audrey Gawlik testified in response to questioning as follows:

"Q And, when you purchased, or when you got the cars, I guess let's start out with the Mustang, your husband, I guess, was the one that was buying it, wasn't he?

A Well, he was buying it, but it was in my name; it was for me.

Q Okay. And, what you told the jury previously, was your husband was agreeing to pay for it, whether it would be through services, or cash, he was agreeing to do that?

A Yes."

David Gawlik testified:

"I talked to Rick Hanright over there. He was the original salesman at Padre Staples Auto Mart, and he was really interested, you know, in the mechanical trade portion of the deal. And, he went and talked to Gary Arnold and got his okay, and you know, I sat back and talked to them for awhile about, you know, about how we basically worked it out. And, he was very agreeable."

David Gawlik's actions with regard to the purchase/sale of the Mustang are sufficient to give him both rights and liabilities under the contract. See *Ciminelli v. Ford Motor Credit Co.,* 624 S.W.2d 903 (Tex. 1981). With regard to the failure of Audrey Gawlik to sign the contract: first, there is nothing in the record to show that David Gawlik did not have the capacity to sign the contract for Audrey Gawlik and that, under the circumstances, her signature was essential to the contract, see *Haan v. Daly,* 409 S.W.2d 958 (Tex.Civ. App.—Waco 1966, writ ref'd n.r.e.); second, the filing of the suit by David and Audrey Gawlik suggest just such an agency relationship, the filing acting as a ratification by Audrey Gawlik of the signature of David Gawlik, see *Lechenger v. Merchants' National Bank,* 96 S.W. 638 (Tex. Civ.App.1906, writ ref'd, error dism'd 209 U.S. 553, 28 S.Ct. 757, 52 L.Ed. 923); and finally, art. 5069–7.02(1) states that "A retail installment contract need not be contained in a single document." The circumstances surrounding the purchase/sale of the Mustang, warrant a conclusion that both the worksheet and the contract on the Mustang may be read together in arriving at a single Retail Installment Contract. Under the facts presented in the record before us, we hold that the absence of Audrey Gawlik's signature on the "Motor Vehicle Contract" was not error as would warrant a recovery under the Texas Consumer Credit Code.

■ Finally, appellant contends that the overcharge by appellee in time price differential of $1.62 warrants recovery under the Code. We disagree. Despite appellant's claim to the contrary, this overcharge is "de minimis." *Wayne Strand Pontiac— GMC v. Molina,* 653 S.W.2d 45 (Tex.App.— Corpus Christi 1983, writ ref'd n.r.e.); *Thornhill v. Sharpstown Dodge Sales, Inc.,* 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ). Having so held, error, if any, in the submission of a charge on bona fide error in connection with the overcharge of $1.62, is harmless.

■ We have carefully considered appellant's two points of error and overrule the same. We now address appellee's cross-

**166**

point of error. Appellee, by cross-point, contends that the trial court erred in not awarding appellee attorney's fees as a result of David Gawlik's breach of warranty pursuant to the DTPA. Appellee raises this point for the first time on appeal. Having failed to except to the failure of the trial judge to award attorney's fees or otherwise apprise the trial court of its dissatisfaction with the judgment, appellee has waived this point. *Varo, Inc. v. Kross*, 511 S.W.2d 719 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.); *Ryan v. Mo-Pac Properties*, 644 S.W.2d 791 (Tex.App.—Corpus Christi 1982, no writ); and, *Time Insurance Agency, Inc. v. Grimes*, 613 S.W.2d 40 (Tex.Civ.App.—Texarkana 1981, no writ). Appellee's point of error is overruled.

The judgment of the trial court is AFFIRMED.

### OPINION ON MOTION FOR REHEARING

On Motion for Rehearing, appellants assign three points of error. In points of error one and two, appellants allege that this Court erred in affirming the judgment of the trial court because the documents evidencing the sale of the two vehicles contain violations of the Texas Consumer Credit Code which would entitle them to recover under the code. Nothing new is presented by these points and we overruled the same.

■ Appellants, in their third point of error, request this Court to reassess the costs of appeal. In our original judgment, costs of appeal were adjudged against appellants. As appellee requested, by cross-point, additional relief through the appeal of this case and such relief was denied, we are of the opinion that costs of appeal should be assessed sixty percent (60%) against appellants and forty percent (40%) against appellees. In all other respects, our judgment is correct.

Appellants' Motion for Rehearing is GRANTED in part and OVERRULED in part. The judgment of the trial court is AFFIRMED.