**YATES FORD, INC. et al., Petitioners,**

v.

**Samuel RAMIREZ, Trinidad Resendez, Estella P. Vela, Angel A. Hinojosa, & San Juan Laso, Respondents.**

Nos. C–3318, C–3320 to C–3322 and C–3324.

Supreme Court of Texas.

June 5, 1985.

Rehearing Denied July 10, 1985.

**52**

Porter, Rogers, Dahlman and Gordon, Rick Rogers, Corpus Christi, Baker and

Botts, Lee H. Rosenthal, Houston, for petitioners.

Hector Gonzalez Law Office, Thomas M. Schumacher, Corpus Christi, for respondents.

RAY, Justice.

This is an appeal from five suits alleging violations of the motor vehicle installment sales provisions of the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–7.01 et seq. The trial court rendered judgments that each of the consumers take nothing from Yates Ford, Inc. and Ford Motor Credit Company. The court of appeals reversed and remanded the cases to the trial court with instructions that the consumers be awarded twice the amount of the time price differential contracted for plus reasonable attorney's fees. 675 S.W.2d 232.[1] We reverse the judgments of the court of appeals and render judgment for Yates Ford, Inc. and Ford Motor Credit Company.

All five of the consumers in these cases purchased motor vehicles in 1979 from Yates Ford, Inc. and signed automobile retail installment contracts. The contracts subsequently were assigned by Yates to the Ford Motor Credit Company. Each consumer brought a separate action against Yates and Ford (Creditor).

A brief synopsis of the facts in each case is necessary to this discussion. On March 10, 1979, Samuel Ramirez bought a 1979 Ford and executed a contract for $7,048.42 with a time price differential of $1,868.18. His first payment was due on April 16. Trinidad Resendez purchased a 1979 Ford and signed a contract on March 15 for $8,466.03 with a time price differential of $2,269.59. His first payment was due on April 29. San Juan Laso purchased a 1979 Ford and executed a contract on May 21 for $6,730.06 and a time price differential of $1,804.34. The first payment was due on July 5. Estella Vela bought a 1979 Ford and signed her contract on May 26 for

1. The court of appeals published the opinion in C–3321, *Vela v. Yates Ford, Inc.* at 675 S.W.2d 232. The other four opinions were not published. Since all five cases have similar facts and identical holdings, we will consider them together in this opinion.

$6,507.80 and a time price differential of $1,744.78. Her first payment was due on July 10. Angel Hinojosa bought a 1977 Dodge and executed a contract on July 27 for $3,643.09 with a time price differential of $917.71. The first payment was due on August 30.

The court of appeals held that the creditor charged a time price differential in excess of the maximum permitted by article 5069–7.03 in each of the contracts. The decision was based in part on the fact that the first payments did not fall due exactly one month from the date of the contract, and thus there were extra "odd days" (the number of days in excess of thirty between the date of the contracts and the date of the first payments) on which the creditor could levy a finance charge under article 5069–7.03(2).

We disagree with the court of appeals' holding that the number of odd days in a retail installment contract must be calculated based on the provision in article 5069–2.-01(j) that " 'Month' means that period of time from one date in a calendar month to the corresponding date in the following calendar month...." Under that formula in Laso's contract, there are fourteen odd days beyond the calendar month (May 21–June 21) to the date of the first payment (July 5). The formula applied to Vela's contract also results in fourteen odd days beyond the calendar month (May 26–June 26) to the date of the first payment (June 10).

■ Instead, we hold that the number of odd days may be calculated by the method provided for in the federal Truth in Lending regulations at Appendix J of Regulation Z, 12 C.F.R. § 226 (1983), which provides at Section (b)(5)(ii) as follows:

If the unit period is a month, the number of full unit periods between two dates shall be the number of months measured back from the later date. The remaining fraction of a unit period shall be the number of days measured forward from the earlier date to the beginning of the first full unit period, divided by 30. If the unit period is a month, there are twelve unit periods per year.

The federal formula produces a different number of odd days in both Laso's and Vela's contracts. There are fifteen odd days counting backwards from the calendar month (July 5–June 5) to the contract date (May 21) in Laso's contract. The formula applied to Vela's contract results in fifteen odd days counting back from the calendar month (July 10–June 10) to the contract date (May 26).

The Consumer Credit Commissioner has approved the use of the federal formula as an acceptable alternative method to the statutory one, as long as it is consistently applied by the creditor. Letter Interpretation No. 81–26 (November 18, 1981). The Legislature empowered the Consumer Credit Commissioner to enforce Chapter 7 of the Consumer Credit Code in article 5069–2.02A(1), and his interpretation of the statute is entitled to some weight. *Cf. Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (interpretation of Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z by the Federal Reserve Board staff entitled to deference by the courts); *Beckendorff v. Harris-Galveston Coastal Subsidence Dist.*, 558 S.W.2d 75, 82 (Tex.Civ. App.—Houston [14th Dist.] 1977), *writ ref'd n.r.e. per curiam*, 563 S.W.2d 239 (Tex.1978) (interpretation of a statute by the administrative agency charged with its implementation entitled to great weight). Further, we note that businesses are required to comply with the federal Truth in Lending regulations, and an interpretation of state law which conforms to such federal requirements will simplify a potentially difficult situation.

The contracts in the other three cases have the same number of odd days, whether determined by the statutory formula or the federal formula. There are six odd days in the Ramirez contract, fourteen odd days in the Resendez contract, and three odd days in the Hinojosa contract.

Calculation of the maximum finance charge in this case is controlled by article

5069–7.03, which provides that the maximum finance charge permitted for a new motor vehicle is $7.50 per $100 per annum. The maximum finance charge for a used motor vehicle is $10 per $100 per annum. The parties differ on exactly how the mathematical calculations should be carried out. However, the difference in methods is so slight that competent mathematicians might disagree as to which is correct.

Using the formula applied by the court of appeals, the base finance charge in Laso's contract is calculated as follows: $7.50 × the amount financed divided by 100 × the number of monthly payments divided by 12. ($7.50) × ($6,730.06 ÷ 100) × (42 ÷ 12). This equals $1,766.64.

To that amount must be added the finance charge for the fifteen odd days, and this calculation is governed by article 5069–7.03(4), which provides in pertinent part as follows:

> if the first installment is not payable one month from the date of the contract, the charge may not exceed an amount which, having due regard for the schedule of installment payments, will provide *the same effective return* as if the contract were payable in substantially equal successive monthly installments beginning one month from the date of the contract (emphasis added).

Assuming that the statute's reference to "the same effective return" means the "annual percentage rate," the charge for the odd days cannot exceed the annual percentage rate of the contract. The annual percentage rate for the 7.5% add-on interest rate for 42 months is 13.60%.[2] The annual percentage rate can be converted to a daily rate by dividing by 365. Thus, the formula for determining the odd days finance charge is: (13.60% ÷ 365) × (15) × ($6,730.06), which amounts to $37.61. Adding the two figures together ($1,766.64 + $37.61), the total finance charge permitted on Laso's contract is $1,804.25. Since he was actually charged $1,804.34, there was an overcharge of $.09.

The maximum allowable finance charge for the Vela contract is $1,744.67,[3] and she was actually charged $1,744.78, which amounts to an overcharge of $.11. The maximum allowable finance charge for the Ramirez contract is $1,865.97,[4] and he was actually charged $1,868.18. Thus, there was an overcharge of $2.21. Under the Resendez contract there was an overcharge of $3.10, since the maximum allowable finance charge was $2,266.49,[5] and he was actually charged $2,269.59. There was an overcharge of $1.54 in the Hinojosa contract, because the maximum allowable charge was $916.17,[6] and he was charged $917.71.

■ Although all five contracts have time price differentials which violate article 5069–7.03, the amounts of the overcharges are miniscule. Spread over 42 months, the monthly overcharge in Laso's contract amounts to $.002, and the monthly overcharge in Resendez' contract is $.074. The creditor contends these amounts are *de minimis*. We agree.

A number of courts of appeals have applied the *de minimis* doctrine to overcharges in Consumer Credit Code cases. *Gawlik v. Padre Staples Auto Mart, Inc.*, 666 S.W.2d 161 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (overcharge of $1.62); *Wayne Strand Pontiac-GMC v.*

---

**2.** 1 Board of Governors of the Federal Reserve System, Truth in Lending Regulation Z Annual Percentage Rate Table.

**3.** ($7.50 × $65.0780 × 3.5) + (.0003726 × 15 × $6,507.80) = $1,744.67.

**4.** ($7.50 ×. $70.4842 × 3.5) + (.0003726 × 6 × $7,048.42) = $1,865.97.

**5.** ($7.50 ×. $84.6603 × 3.5) + (.0003726 × 14 × $8,466.03) = $2,266.49.

**6.** Since Hinojosa bought a used car, the add-on interest rate for his contract was $10. Tex.Rev. Civ.Stat.Ann. art. 5069–7.03(1). The basic allowable finance charge is determined by this formula: $10 × $36.4309 × 2.5 (30 monthly payments divided by 12) = $910.77. The annual percentage rate for a 10% add-on rate over 30 months is 18.05%. *See* note 2. The daily rate is .0004945 (18.05% ÷ 365). The additional allowable charge for the odd days is calculated as follows: .0004945 × 3 × $3,643.09 = $5.40.

*Molina,* 653 S.W.2d 45 (Tex.Civ.App.—Corpus Christi 1983, writ ref'd n.r.e.) ($5.53 overcharge for license fee); *Starness v. Guaranty Bank,* 634 S.W.2d 325 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (overcharge of $7.56 over 36 months); *Thornhill v. Sharpstown Dodge Sales, Inc.,* 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ) (overcharge of $.42 over 42 months).

▇ Since this is a penal statute, it must be strictly construed. *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.).

In passing this statute, the legislature declared its intent to protect the citizens of Texas from abusive and deceptive practices perpetrated by unscrupulous creditors. Act of May 23, 1967, Ch. 274, § 1, 1967 Tex.Gen.Laws 608, 15 Tex.Rev.Civ.Stat. Ann. 1–2 (Vernon 1971). The small amount of the overcharges here indicates the creditor made a slight error in calculating the finance charges under a highly technical statute—not that this was an unscrupulous scheme to defraud citizens.

We hold the overcharges are *de minimis,* and the consumers are not entitled to recover penalties under the statute. Accordingly, the judgments of the court of appeals are reversed, and the trial court's judgments are affirmed.

KILGARLIN, J., files a concurring opinion in which SPEARS, J., joins.

KILGARLIN, Justice, concurring.

While I concur in the result reached by the majority, I certainly do not do so on the theory that *de minimis* usurious charges should go unpunished. I arrive at the conclusion in a different manner. The majority holds that charging $2.00 to $3.00 interest above the maximum legal rate is an excusable violation of the usury laws. I agree that this is a penal statute and that as such it must be strictly construed. *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). Strict construction, however, does not entail excusing violations of the law, particularly not the Consumer Credit Code.

The code was enacted with a Declaration of Legislative Intent which, among other things, said:

(1) Many citizens of our State are being victimized and abused in various types of credit and cash transactions ....

\* \* \* \* \* \*

(3) [P]enalties imposed for usury do not provide effective or workable safeguards....

(4) These unregulated practices bring great social and economic hardship to many citizens of our State. They impose intolerable burdens on those segments of our society which can least afford to bear them—the uneducated, the unsophisticated, the poor and the elderly.

(5) These facts conclusively indicate a need for a comprehensive code of legislation to clearly define interest and usury, ... and to provide firm and effective penalties for usury and other prohibited practices.

15 Tex.Rev.Civ.Stat.Ann., Tit. 79, § 1, pp. 1–2 (Vernon 1971).

A violation, regardless of how small and insignificant it may seem to the judges on this court, is nevertheless a violation for which penalties have been authorized. Our holding is akin to a court determining that a blood alcohol content of 0.11% is *de minimis* and therefore the provisions of Tex. Rev.Civ.Stat.Ann. art. 6701*l*–1 should not be enforced. Both are penal statutes designed to combat social ills. Once we have opened the Pandora's box of line drawing, we will be called upon again and again to decide if this or that amount of excessive interest violates the law. How and where will we draw that line? Is it to be $5.00, $10.00, $15.00, or what? How fares the uneducated, the unsophisticated, the poor and the elderly under our scheme?

With this opinion we have washed away the brightly colored line that the legislature has drawn and substituted our own less distinct definition of usury. While it may seem insignificant to punish a company for charging $3.00 over the legal rate,

we must recognize that loan companies now deal in volume. If we multiply $3.00 by the number of loans a credit corporation or car dealership establishes, the extra income to the loan company may be enormous.

Although it appalls me to hold that a *de minimis* violation is no violation, as the majority does, I concur in the result which the majority reaches. I do so, however, based on a mathematical argument which the auto dealership makes. It basically argues that the lower court's calculations to determine whether usury has been charged were incorrect. Relying on the language of Tex.Rev.Civ.Stat.Ann. art. 5069–7.03(4), Yates argues that the law dictates the maximum annual percentage rate to be charged, not the maximum number of dollars to be charged. The relevant language of article 5069–7.03(4) states:

[I]f the first installment is not payable one month from the date of the contract, the charge may not exceed an amount which, having due regard for the schedule of installment payments, will provide the same effective return as if the contract were payable in substantially equal successive monthly installments beginning one month from the date of the contract.

Effective return is the equivalent of an annual percentage rate or APR. Yates interprets this language to mean that the legislature authorized car dealerships and loan companies to charge an annual percentage rate for contracts with odd days that is the equivalent of the annual percentage rate legally authorized to be charged for contracts without odd days. In this particular instance, the car dealership entered into a contract allowing the consumer forty-two months and six days to pay off the debt. Not only should Yates be able to charge interest for the additional six days during which the consumer had use of the loan principal, but it should also be able to charge a slightly higher amount of interest because the extra interest rate allowed to be charged for those six days will be amortized throughout the contract's life. Each payment the consumer makes to

the dealership will include the interest the consumer would have paid had there been no additional six days in the contract and will include money for the principal. In addition, because of the extra six days, each payment will also include an amount toward the interest chargeable on the six days. That extra amount for that six day interest will decrease the amount the consumer pays on the principal with each payment. Consequently, the consumer will have use of a greater amount of the principal over a longer period of time. The annual percentage rate is designed to compensate for these variations in payment schedules.

Under Yates' argument, the first thing to be done is to calculate the maximum legal charge. The statute requires the maximum APR for the forty-two month and six day contract to be the rate that would be allowed assuming this were only a forty-two month (with no odd days) contract. This APR is determined by using a table to convert the $7.50/$100/annum ceiling authorized by art. 5069–7.03(1) Class 1 into an APR. The conversion results in a 13.60671078% maximum APR.

Next, we calculate the annual percentage rate actually charged by the car company. This determination requires the use of a formula provided by Appendix J of Federal Regulation Z of the Federal Truth in Lending laws. The use of this formula requires advanced mathematical calculations called iteration and interpolation. Iteration involves the successive repetition of a mathematical operation, and interpolation is a process which allows a mathematician to define a number within certain bounds. The calculator continuously plugs a set of two numbers into a formula to narrow these bounds in order to arrive at a precise number. Applying these operations to the formula and the facts in each of these cases, we determine that Yates charged Ramirez an APR on this forty-two month and six day contract of 13.5950953%, which is .0116155% smaller than the maximum legal rate allowable. The car dealership charged below the legal rate on the other

four loans as well. Because Yates charged under the maximum legal rate, its charges were not usurious.

The method of reaching this result is difficult and complicated; thus it ought to be supported by expert testimony and explanations of the mathematical intricacies involved. Nevertheless, Yates made this argument in its applications for writ of error and provided some guidance, and the consumers never challenged the calculations or the results. The calculations result in a determination that Yates did not overcharge for the loans which it made.

Consequently, the court does Yates an injustice by assuming that it charged a usurious rate of interest when, in fact, it charged an amount of money fully within the amount legally authorized. Rather than diving into the murky depths of a *de minimis* holding, I believe justice is better achieved by actually examining the merits of the case. In this manner, we preserve the bright line established by the legislature; we preserve the legislative intent of imposing penalties on perpetrators of usury; and, we forestall future questions involving the extent of a *de minimis* violation. For the reasons above, I concur in the judgment.

SPEARS, J., joins in this concurring opinion.