**In re John Ryan CORCORAN, and Dawn Marie Corcoran, Debtors.**

**John R. Corcoran and Dawn Marie Corcoran, Plaintiffs,**

**v.**

**TranSouth Financial Corporation, Defendant.**

**Bankruptcy No. 01–2443–8G3.
Adversary No. 01–140.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 1, 2001.

J.W. Bonie, St. Petersburg, FL, for plaintiffs/debtors.

David J. Tong, Tampa, FL, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Dismiss filed by the Defendant, TranSouth Financial Corporation (TranSouth).

The Debtors, John R. Corcoran and Dawn Marie Corcoran, commenced this adversary proceeding by filing an "Objection to the Proof of Claim filed by TranSouth Financial Corporation on February 27, 2001 and Debtors' Proceeding Pursuant to Bankr.Rule 7001 against TranSouth." Generally, the Debtors allege that they signed a retail installment contract in connection with the purchase of a used vehicle, that TranSouth is the holder of the contract, and that the contract violates the Florida Motor Vehicle Retail Sales Finance Act by imposing a finance charge in excess of that allowed under Florida law.

TranSouth contends that the finance charge set forth in the contract did not exceed the legal limit, and therefore requests that the Debtors' Complaint be dismissed with prejudice.

## Background

On September 8, 2000, the Debtors entered into a contract with Ferman Chevrolet Oldsmobile of Tarpon Springs (Ferman). Pursuant to the contract, the Debtors purchased a used 1994 Chrysler Concorde vehicle from Ferman, and agreed to finance the purchase price. According to the contract, the amount financed was $6,524.35, the amount of the finance charge was $3,704.33, and the annual percentage rate was 27.50 percent. The total amount due under the contract was to be paid in forty-two equal monthly installments of $243.54 each.

The agreement reflects that Ferman assigned its interest in the contract to TranSouth Mortgage Corporation. TranSouth does not appear to contest that it is the "holder" of the contract. (TranSouth's Memorandum of Law in Support of Motion to Dismiss, pp. 1–2).

The Debtors filed a petition under chapter 13 of the Bankruptcy Code on February 16, 2001. On March 5, 2001, TranSouth filed a proof of claim (Claim No. 1) in the Debtors' bankruptcy case. Claim No. 1 was filed as a secured claim in the amount of $6,065.39.

## Discussion

■ The Debtors focus on § 520.08(1)(4), Florida Statutes:

**520.08. Finance charge limitation**

(1) Notwithstanding the provisions of any other law, the finance charge, exclusive of insurance, shall not exceed the following rates:

.    .    .    .    .

(d) Class 4. Any used motor vehicle not in Class 2 or Class 3 and designated by the manufacturer by a year model more than four years prior to the year in which the sale is made—*$17 per $100 per year.*

(Emphasis supplied).

The Debtors allege in paragraph 10 of their Complaint:

10. The retail installment sales contract calls for the Debtors to pay an [sic] finance charge of $3,704.33 on an amount financed of $10,228.58 in installment payment [sic] of $243.54 per month for a period of 42 month [sic] for an annual interest rate of 27.50% or *$27.50 per $100.00.*

(Emphasis supplied). It does not appear that the Debtors performed any independent calculation in reaching their conclusion that the finance charge was imposed at a rate of "$27.50 per $100.00." Instead, it appears that the Debtors have simply taken the figure computed as the annual percentage rate in the contract and stated it in terms of "dollars per $100."

The Debtors allege that the retail installment contract that they signed on September 8, 2000, violates § 520.08(1)(d) because the finance charge set forth in the contract exceeds the rate of $17 per $100 per year. The Debtors therefore contend that, pursuant to § 520.12(2) of the Florida Statutes, they are entitled either to an affirmative judgment against TranSouth, or a setoff against TranSouth's claim, in an amount equal to the finance charge.

TranSouth stipulates that "the Florida Motor Vehicle Sales Finance Act, section 520.01, *et seq.,* Florida Statutes, applies to the subject loan." (TranSouth's Memorandum of Law, p. 2). TranSouth also acknowledges that the statute "specifies the maximum permitted finance charge on motor vehicle sales." (TranSouth's Memorandum of Law, p. 2).

In response to the Debtors' Complaint, however, TranSouth asserts that "the critical inquiry is how the finance charge is to be calculated pursuant to § 520.08(1)(d)." (TranSouth's Memorandum of Law, p. 3). According to TranSouth, the Debtors' method of determining whether a finance charge exceeds the statutory limit is inaccurate. TranSouth asserts that "when properly calculated in accordance with Section 520.08, the interest rate charged the Plaintiffs on the retail installment sales contract makes the finance charge less than the statutory cap established by the Legislature." (TranSouth's Memorandum of Law, p. 2). Specifically, TranSouth asserts that the "finance charge on this loan is actually $16.22 per $100.00 per year, well below the statutory cap." (TranSouth's Memorandum of Law, p. 3).

**The Issue**

Whether the contract includes a finance charge greater than that allowed by § 520.08, Florida Statutes, depends on the method of calculating the maximum finance charge allowed under that statute. If the maximum finance charge is calculated by applying $17 per $100 of the amount financed for the term of the loan, the maximum finance charge allowed by the statute is one amount. If the maximum finance charge is calculated by applying $17 per $100 of the outstanding balance over the term of the loan, the maximum finance charge is another amount.

**The Statute**

Section 520.08(1)(d), Florida Statutes, must be read in the context of other provi-

sions of the Florida Motor Vehicle Retail Sales Finance Act.

## CHAPTER 520. RETAIL INSTALLMENT SALES

## PART I. MOTOR VEHICLE SALES FINANCE

### 520.08. Finance charge limitation

(1) Notwithstanding the provisions of any other law, the finance charge, exclusive of insurance, shall not exceed the following rates:

.     .     .     .     .

(d) Class 4. Any used motor vehicle not in Class 2 or Class 3 and designated by the manufacturer by a year model more than four years prior to the year in which the sale is made—*$17 per $100 per year.*

(2) *Such finance charge shall be computed on the amount financed* as determined under § 520.07(2) . . . .

.     .     .     .     .

### 520.085. Simple-interest contracts

A retail installment contract under The Motor Vehicle Retail Sales Finance Act may provide that the rate of finance charge be calculated on a simple-interest basis subject to the following provisions:

(1) *Instead of a finance charge computed on the amount financed* as determined under s. 520.07(2), *the seller may compute the finance charge at a simple-interest rate equivalent to the finance charge permitted by s. 520.08 on the unpaid balance as it changes from time to time* or by any other method . . . .

.     .     .     .     .

(Emphasis supplied).

### 520.07. Requirements and prohibitions as to retail installment contracts

.     .     .     .     .

(2) The contract shall contain the following:

(a) *Amount financed.*—The "amount financed," using that term, and a brief description such as "the amount of credit provided to you or on your behalf." The amount financed is calculated by:

1. Determining the cash price, and subtracting any down payment;

2. Adding any other amounts that are financed by the creditor and that are not part of the finance charge; and

3. Subtracting any prepaid finance charge.

(b) *Finance charge.*—The "finance charge," using that term and a brief description such as "the dollar amount the credit will cost you."

Section 520.08(2) directs that the finance charge be computed on the amount financed, and the amount financed is to be determined as directed by § 520.07(2). Section 520.085 provides that the finance charge may be computed at the simple interest rate equivalent to the charge permitted by § 520.08, on the unpaid balance as it changes from time to time. When § 520.08(1) and § 520.085 are read together, it is clear that the method of computing the maximum finance charge allowed under § 520.08(1)(d) is to determine $17 per $100 of the amount financed for the term of the loan. If the maximum finance charge were limited by the application of $17 per $100 to the outstanding balance over the term of the loan, there would be no need for the alternative provisions of § 520.085. Moreover, § 520.085 demonstrates that the Florida legislature clearly knew how to describe a charge based on an outstanding balance as that balance changes from time to time, and the Florida legislature included such a provision with its authorization of a simple-interest rate calculation but did not include such a provision with its limitation of the finance charge based on the amount financed.

■ A Florida statute should be construed in its entirety, and the different parts of a statute reflect light on each other. *State v. Hayles*, 240 So.2d 1 (Fla. 1970)("As a general rule, in construing a statute to ascertain the intention of the Legislature, the statute should be construed as a whole or in its entirety, and the legislative intent gathered from the entire statute rather than from any one part thereof.")

The Court concludes that the appropriate method of calculating the maximum finance charge allowed by § 520.08 is to apply $17 per $100 of the amount financed for the term of the loan. When the maximum finance charge is calculated in this manner, it is clear that the amount provided in the contract entered by the Debtors does not violate § 520.08, Florida Statutes.

**Cases**

At the hearing on TranSouth's Motion to Dismiss, the parties jointly represented that no judicial decisions have been reported in Florida to assist the Court in determining how to calculate the rate of a finance charge under § 520.08. (Transcript of July 24, 2001, hearing, p. 9).

The Court has located one reported Florida case on this issue, a 1964 decision of the Small Claims Court in Dade County: *General Finance Corporation of Florida v. Carvajal*, 23 Fla. Supp. 25 (Sm.Cls. Dade Cty.1964). At the time of that case, relevant provisions of the Florida Statute were similar, except the term "principal balance" was used rather than the term "amount financed." In that case, the Court concluded that the amount of the finance charge permitted under the statute was determined on the "principal balance" arrived at upon the inception or execution of the contract, rather than on the basis of descending balances.

Courts in other states have also construed statutes that established rates for maximum finance charges according to a formula similar to that set forth in § 520.08. Prior to 1980, for example, Maryland applied a "dollars-per-$100 formula." See *McGraw v. Loyola Ford, Inc.*, 124 Md.App. 560, 595, 723 A.2d 502 (1999). See also *Ruona v. Freeway Dodge, Inc.*, 285 Minn. 23, 171 N.W.2d 212, 216 (1969)(The Supreme Court of Minnesota discussed the Minnesota Motor Vehicle Retail Installment Sales Act, which expressed "the maximum authorized finance charges in terms of a ratio of dollars per hundred dollars per year."). In states that have adopted this formula, finance charges are defined in terms of a specific number of dollars charged per $100 of the principal balance set forth in the contract. That number, however, is not interchangeable with the interest rate determined on the outstanding balance of the contract. See *Mandan Supply, Inc. v. Steckler*, 244 N.W.2d 698, 706 (N.D.1976).

The Florida Motor Vehicle Retail Sales Finance Act was first enacted in 1957. That statute, and similar statutes in some other states, preceded the Consumer Credit Protection Act codified in Chapter 41, United States Code that was enacted in 1968. In *Mandan Supply, Inc. v. Steckler*, 244 N.W.2d 698, 706 (N.D.1976), the Court describes the calculation of finance charges at that time:

The "add-on" method of calculating finance charges is one of the three methods usually specified by statutes which regulate charges for the extension of credit. The calculation of finance charges is explained in Warren, *Regulation of Finance Charges in Retail Instalment Sales*, 68 Yale L.J. 839,853 (April 1959), as follows:

The finance charge maxima prescribed by these statutes are liberally drawn in favor of the financer. Of the three methods of calculating finance

charges usually specified—add-on, discount, and interest on the unpaid balance [49]—*the add-on method is most common, having been incorporated into the majority of the statutes* regulating instalment sales of durable consumer goods. *This method simply entails adding the finance charge to the amount the buyer finances,* and is the system ordinarily used by dealers in computing finance charges on such goods. *A statutory add-on maximum of six dollars per one hundred dollars of the principal balance financed does not limit the dealer to a true interest rate of six per cent, for the buyer does not have the use of the entire principal balance for the whole year.* Since he is discharging his obligations by monthly payments and has the use, on an average, of only slightly more than one-half of the original principal balance throughout the year, the true interest rate on a six per cent add-on charge is something over eleven per cent.[50] When this method of computation is understood, it is possible to appreciate the economic significance of add-on charges permitted by various state statutes to run from six to nine per cent on new cars, nine to thirteen percent on late model used

cars, and twelve to seventeen per cent on older used cars.

*With the advent of "Truth–in–Lending" legislation, disclosure of a finance charge in terms of, for example, $7.00 per $100.00 add-on is prohibited, and lenders (or installment sellers) must disclose all finance charges in terms of the "annual percentage rate".*

(Emphasis supplied.)

Where a specific finance charge has been challenged on the basis that it exceeds a statutory "dollars per $100" limitation, courts have approached the issue by first determining the maximum finance charge allowed under the statute, and then comparing the maximum charge allowed to the actual charge contained in the contract. In *Yates Ford, Inc. v. Ramirez,* 692 S.W.2d 51 (Tex.1985), for example, the Supreme Court of Texas considered the Texas statute:

Calculation of the maximum finance charge in this case is controlled by article 5069–7.03, which provides that the maximum finance charge permitted for a new motor vehicle is $7.50 per $100 per annum. The maximum finance charge for a used motor vehicle is $10 per $100 per annum. . . .

---

49. The "discount" and "interest-on-the-unpaid balance" methods of calculating finance charges are briefly explained in Federal Reserve Report pt. I., vol. 1, at 50:

The discount method of calculating finance charges involves starting with the total amount of the note and reducing the rate of discount in order to determine the proceeds going to the borrower. If the note were written for $100 for a year and the discount rate were 6 percent, the borrower would receive $94 and his payments would be $8.33 per month. The discount method is used for FHA title I repair and modernization loans and for some personal instalment loans.

The calculation of interest on the unpaid balance involves computing each month the

amount of interest due on the balance outstanding since the previous payment. The consumer may thus pay a different amount each month, or the payment schedule can be arranged to provide for equal monthly payments with a declining portion of the payment going to pay the finance charge and an increasing proportion to reduce the principal as the loan matures. This method of computing the finance charge is generally used for personal instalment loans granted by consumer finance companies and credit unions.

50. The true or effective interest rate is sometimes estimated at about twice the add-on rate, but this yields a figure somewhat too high. . . .

Using the formula applied by the court of appeals, the base finance charge in Laso's contract is calculated as follows: $7.50 × the amount financed divided by 100 × the number of monthly payments divided by 12.

*Yates Ford, Inc. v. Ramirez*, 692 S.W.2d at 53–54. In that case, the amount financed by the purchaser was $6,730.06, and the payments extended for a period of 42 months. Consequently, the court performed the following calculation in determining the maximum finance charge allowed: $7.50 × ($6,730.06 / 100) × (42 / 12) = $1,766.64. *Id.* at 54. The court then compared the maximum charge allowed under the statute to the amount charged in the contract to determine whether any overcharge existed.

Similarly, in *Mandan Supply, Inc. v. Steckler*, 244 N.W.2d 698 (N.D.1976), the Court addressed the North Dakota statute:

> Both parties agree that the retail installment sales contract in the instant case is governed by the limitation set forth in class 1 of subdivision A of subsection 1 of § 51–13–03, N.D.C.C. [footnote omitted]. Consequently, the maximum "credit service charge" which Mandan Supply could levy on the retail installment sale of the combine to Steckler was $7.00 per $100.00 of the unpaid portion of the "cash sale price," which, in the instance case, is $14,000.00.

In making such determination, the district court applied the following formula:

Maximum rate of $7.00 per $100.00 × 140 = $ 980.00
x 2¼ years = $2,205.00

*Mandan Supply, Inc. v. Steckler*, 244 N.W.2d at 704. Consequently, the North Dakota court in *Mandan Supply* determined the maximum finance charge allowed under a particular contract by performing the same calculation that the Texas court performed in *Yates Ford.*

**Application**

In the case at issue, the principal amount financed by the Debtors was $6,524.35, and the total amount due under the contract was to be paid in forty-two monthly installments. Section 520.08 of the Florida Statutes provides that finance charges shall not exceed the rate of "$17 per $100 per year ... computed on the amount financed." As discussed above, therefore, the maximum finance charge allowed under the contract should be computed as follows:

$17 × ($6,524.35 / $100) × (42 / 12) =

$17 × 65.24 × 3.5 =

$3,881.78

According to the computation, therefore, the maximum finance charge allowed on the Debtors' contract is $3,881.78. The finance charge actually contained in the contract was $3,704.33. Since the actual finance charge is less than the maximum charge permitted pursuant to the computation, the contract did not violate § 520.08 of the Florida Motor Vehicle Retail Sales Finance Act.

TranSouth approached the statute by first calculating the actual finance charge set forth in the contract in terms of "dollars per $100 per year." TranSouth then determined whether that figure is greater than or less than the "$17 per $100 per year" allowed by the statute. Following this approach, the actual finance charge set forth in the contract, defined in terms of "dollars per $100 per year," is calculated as follows:

$6,524.35 [principal] / $100 = 65.2435

$3,704.33 [finance charge] / 3.5 [years] = $1,058.38

$1,058.38 / $65.2435 = $16.22

The result of this calculation ($16.22 per $100 per year) represents the rate of the actual finance charge contained in the Debtors' contract. This actual rate, of course, is less than the rate of $17 per

$100 per year provided by § 520.08 as the maximum charge allowed.

Accordingly, it is clear that the finance charge contained in the Debtors' contract did not exceed the limitation set forth in § 520.08 of the Florida Statutes.

The Debtors' Complaint is based solely on the alleged violation by TranSouth of the Florida Motor Vehicle Retail Sales Finance Act. Since the amounts set forth in the Complaint and in the Debtors' contract do not show that a violation of the statute occurred, the Debtors have not stated a claim upon which relief can be granted. Fed. R. Bankr.P. 7012(b). Consequently, the Court finds that the Complaint should be dismissed.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Dismiss filed by the Defendant, TranSouth Financial Corporation, is granted.

2. The above-captioned adversary proceeding is dismissed.