**ENELL CORPORATION d/b/a Homeowners Home Improvement Company, E.W. Schrader and John B. Davis, Individually and d/b/a Shoreline Development Company, Appellant,**

v.

**Cesar Xavier LONGORIA, Appellee.**

**No. 04–91–00206–CV.**

Court of Appeals of Texas,
San Antonio.

July 22, 1992.

Rehearing Denied July 22, 1992.

Fred D. Dreiling, Spann & Smith, P.C., Corpus Christi, for appellant.

Homer Mora, Falfurrias, for appellee.

Before PEEPLES, BIERY and CARR, JJ.

## ON APPELLEE'S MOTION
## FOR REHEARING

BIERY, Justice.

Appellee's motion for rehearing concerning the trial court award of attorney's fees is granted. The opinion of this court delivered on June 17, 1992, is withdrawn and the following opinion is substituted.

This is an appeal from a summary judgment in an action for statutory penalties under the Texas Consumer Credit Code.[1] Enell Corporation, d/b/a Homeowners Home Improvement Company; E.W. Schrader and John B. Davis, Individually and d/b/a Shoreline Development Company (collectively referred to as "Enell") appeal from the trial court's order granting Cesar Xavier Longoria ("Longoria") summary judgment on his claim for violations of the Texas Consumer Credit Code. The judgment awarded Longoria a statutory penalty, attorney's fees, interest, costs and declared the lien at issue null, void and unenforceable. We affirm.

This suit arises out of the execution of a "Proposal," a "Retail Installment Contract" and a "Contract for Labor and Materials and Trust Deed." Under the terms of these documents, Longoria entered into an agreement with Enell which provided that Enell would install insulation, vinyl siding, and make other home improvements for the cash price of $9,000.00 plus a finance charge of $9,318.00 for a total charge of $18,310.00. The total amount was to be paid in 120 monthly payments of $152.65 each, and the contract disclosed that the annual percentage rate was sixteen percent.

To secure the payment of this debt, in the documents entitled "Retail Installment Contract," and "Contract for Labor and Materials and Trust Deed," Enell was given a "mechanic's lien, materialmen's lien, laborer's lien and contractor's lien" upon Longoria's property. Moreover, the "Contract for Labor and Materials and Trust Deed" provided the financial arrangement was governed by "Chapter 6 of the Texas Credit Code" (hereinafter referred to as the "Texas Consumer Credit Code" or as the "Code").

Enell completed the work. Longoria began making his monthly payments in March of 1987, but defaulted, and has not made a payment since July 1988. After a year of nonpayment, Enell's assignee, Shoreline, initiated foreclosure proceedings. Longoria filed suit seeking damages and cancellation of any lien which Enell was attempting to attach to the property. He also sought, and obtained, a temporary injunction restraining Enell from conducting a nonjudicial foreclosure sale. This court affirmed the trial court's order granting the temporary injunction. Longoria subsequently filed, and the trial court granted, his motion for summary judgment based solely on his claim of violation of the Texas Consumer Credit Code.

In his motion, Longoria alleged that Enell violated the Texas Consumer Credit Code by obtaining a first lien on his property in violation of art. 5069–6.05 of the Code, which states in relevant part:

No retail installment contract or retail charge agreement shall: . . .

(7) Provide for or grant a first lien upon real estate to secure such obligation. . . .

TEX.REV.STAT.ANN. art. 5069–6.05(7) (Vernon 1987). Enell filed summary judgment evidence that ad valorem property taxes were owing on Longoria's property at the time Longoria entered into the agreement with Enell. According to Enell, these unpaid real property taxes caused tax liens to be placed on the property which were first and superior to the lien created by the "Retail Installment Contract" and the "Contract for Labor and Materials Trust Deed."

---

**1.** The plaintiff/appellant Longoria also sued under the Texas Deceptive Trade Practices—Consumer Protection Act, the Texas Home Solicitation Act and for common law fraud; however, the trial court, under an agreed order, severed Longoria's Consumer Credit Code claim from the main suit.

Enell relies upon Texas tax law to support its proposition that a tax lien constitutes a "first lien" as contemplated by art. 5069–6.05(7) of the Texas Consumer Credit Code. The Tax Code provides, in pertinent part, that a tax lien "takes priority over the claim of any creditor of a person whose property is encumbered by the lien and over the claim of any holder of a lien on property encumbered by the tax lien...." TEX.TAX CODE ANN. § 32.05(b) (Vernon 1982). While we agree that, by the express terms of the statute cited above, tax liens are superior to contractual liens, we do not agree that this provision determines priority between the sovereign and contract lienors for Consumer Credit Code purposes.

As a general rule, statutes are to be strictly construed and not extended to meet facts and circumstances for which no provision is made. *Yates Ford, Inc. v. Ramirez*, 692 S.W.2d 51, 55 (Tex.1985) (Consumer statute is penal in nature and should be strictly construed); *see also McClellan v. Haley*, 237 S.W. 627, 629 (Tex.Civ.App.—San Antonio 1922), *aff'd*, 250 S.W. 413 (Tex. 1923). The Texas Consumer Credit Code does not define a "first lien" nor does it provide that a tax lien is considered a "first lien." The Tax Code provision relied upon by Enell does not classify a tax lien as a "first lien" or provide that it may be used by contractual creditors to escape the prohibitions of consumer protection laws. Rather, the Texas Constitution classifies a tax lien as an inextinguishable "special lien" which must be paid to the sovereign. TEX. CONST. art. VIII, § 15. It follows that the provision giving tax liens priority over contractual liens was intended to protect and benefit the state of Texas, not to benefit creditors executing retail installment agreements. The legislature has stated that it intended, in enacting the Consumer Credit Code, "to protect the citizens of Texas from abusive and deceptive practices now being perpetrated by unscrupulous operators, lenders and vendors in both cash and credit consumer transactions...." TEX.REV.CIV.STAT.ANN. art. 5069 Declaration of Legislative Intent (Vernon 1987).

As stated by this court in *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 255 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e), the Code does not attempt to deny creditors their lien. It merely prohibits materialmen from taking a first lien in a retail installment transaction. The effect of the statute is to "limit first lien transactions to 10 percent interest or less." Through this statutory scheme, creditors are required to choose between higher interest rates and less security or lower interest rates and greater security. *Id.*

In this case, as in other cases under Texas law, the contract must be construed most strictly against its author. *Temple–Eastex Inc., v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984); *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 115 (Tex.1978). Here, Enell drafted the documents and included a provision in the contract executed by Longoria expressly stating that the transaction was to be governed by the Consumer Credit Code. The interest rate was set at sixteen percent. The contract clearly granted a lien, and the undisputed testimony shows that there was no lien, other than a possible tax lien (which cannot be considered a "first lien" under these circumstances), on Longoria's property at the time of the transaction. The retail installment contract signed by Longoria is in violation of the Texas Consumer Credit Code, art. 5069–6.05, in that the contract provided for a first lien on Longoria's home. *See De La Fuente v. Home Sav. Ass'n*, 669 S.W.2d 137, 140–41 (Tex.App.—Corpus Christi 1984), *overruled on other grounds*, *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987); *Jim Walter Homes, Inc. v. Chapa*, 614 S.W.2d 838, 842 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e). We hold the trial court did not err in granting Longoria's motion for summary judgment. Points of error numbers one, two and three are overruled.

After finding that art. 5069–6.05(7) was violated by Enell, the trial court assessed the penalties contained in art. 5069–8.01(b), a $4,000.00 fine and reasonable at-

torney's fees. In addition, the court declared the lien obtained on Longoria's property null, void and unenforceable. In point of error number four, Enell contends the trial court erred in invalidating the lien because the penalty provisions of the Code do not provide for such relief.

The Texas Supreme Court addressed the enforceability of a provision found to violate art. 5069–6.05 of the Code in *Southwestern Inv. Co. v. Mannix*, 557 S.W.2d 755 (Tex.1977). In *Mannix*, the debtor executed a retail installment contract waiving his cause of action for any tort committed by the creditor in the repossession of the goods. *Id.* at 763. After finding that this provision violated art. 5069–6.05 of the Code, the court ordered the creditor to pay penalties and attorney's fees pursuant to article 5069–8.01. The court went on to state that "[i]t is well-settled that such a provision would not be enforced by the courts of Texas" and reasoned that "the Legislature must not only have intended such an unconscionable contract provision to continue to be unenforceable, but also to penalize any creditor who included such a prohibited provision in a retail installment contract." *Id.* Moreover, article 5069–6.05 imposes "a duty upon the creditor not to include such an unconscionable provision in the installment contract." *Id.* at 763–64.

This same conclusion, that a creditor has a duty to prepare a contract in accordance with the standards established by the Legislature, can be reached in the case of a first lien violation of article 5069–6.05(7) of the Code. As this court stated in *O.R. Mitchell Motors, Inc. v. Bell*, 528 S.W.2d 856, 860 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.):

> In view of the clear legislative intent to protect buyers by preventing abusive and deceptive practices by sellers, and to achieve this objective by regulating the conduct and activities of sellers, there can be no doubt that the legislature intended to achieve its goal by imposing duties on the persons who, in the legislative judgment, had, under the old law, been guilty of abusive and deceptive practices.

To allow a creditor to continue the practice of placing first liens upon property with the mere payment of $4,000.00 and attorney's fees is to allow the creditor to avoid its duties under the Code and profit from the very evil the legislature seeks to avoid. If, for example, a lien was obtained on very valuable property and/or the contract amount and the percentage rate of interest were high enough, the $4,000.00 statutory penalty would be a minor cost of doing business for the creditor. Point of error number four is overruled.

In point of error number five, Enell contends the record does not contain evidence to support the trial court's award of attorney's fees to Longoria. Enell candidly admits to receiving an affidavit supporting Longoria's request for attorney's fees along with Longoria's motion for summary judgment, but notes that the affidavit is not contained in the record before this court. We note, however, that subsequent to the filing of the transcript in this appeal an amended transcript was filed by agreement of the parties. The amended transcript contains the affidavit of Longoria's attorney concerning evidence of Longoria's attorney's fees. Pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure, the affidavit is uncontroverted testimonial evidence of an expert witness giving his opinion concerning the reasonableness of the attorney's fee in question. We find the affidavit to be clear, positive and direct, free from contradictions and inconsistencies, and we find that it could have been readily controverted. The affidavit sets forth the qualifications of Longoria's attorney as a licensed lawyer of some eleven years experience, that he was retained by Longoria for the purposes of this cause of action and a detailed listing of the time and services provided to Longoria in connection with this case, and that this particular attorney's normal and customary fee for such services is $100.00 per hour. We hold that there was sufficient uncontroverted summary judgment evidence to support the trial court's award of attorney's fees.

Accordingly, the judgment of the trial court is affirmed.