

# NUMBER 13-21-00134-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARLENE VASQUEZ GARCIA,**                                         **Appellant,**

**v.**

**WAGON CITY SOUTH, INC.,**
**BETTY SOLBERG, DALE WHITZEL,**
**DON WILLIAMS, GLORIA SMITH,**
**SHERRIE SCHEFFERT, AND**
**SHERWIN WILCOX,**                                                 **Appellees.**

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant Marlene Vasquez Garcia appeals the trial court's summary judgment in

favor of appellees Wagon City South, Inc., (WCS), Betty Solberg, Dale Whitzel, Don

Williams, Gloria Smith, Sherrie Scheffert, and Sherwin Wilcox. By seven issues, which we renumber, Garcia argues the trial court erred: (1) in sustaining appellees' objections to her summary judgment evidence; (2) in overruling her objections to appellees' summary judgment evidence; and (3–6) in granting summary judgment regarding (a) WCS's claims against her, (b) her counterclaims against WCS, (c) the individual appellees' claims against her, (d) her counterclaims against the individual appellees; and (7) in awarding attorney's fees. We affirm in part and reverse and remand in part.

## I. BACKGROUND

WCS was created in 1981 as a residential subdivision in Hidalgo County, and it filed its original declaration of covenants, stipulations, and restrictions in the Hidalgo County property records. The original declaration restricted WCS to "adult, single family residents," and stated that "[m]inors may visit [within WCS] up to 30 days per year but shall not permanently reside within" WCS (Minors Rule). In 1992, the declaration was amended to clarify that "[t]here shall be no child or children under the age of 18 of age in residency in this Subdivision." In 1994, WCS amended the declaration again, giving its board the "right to enforce, by legal proceedings, any violation of the Original Covenants or any amendment thereof against the violator."

In November 2015, Garcia purchased property in WCS, and she signed an "Age Certificate," certifying that she was over fifty-five years of age, that no person under the age of eighteen would reside in WCS, and that she accepted WCS's declaration of covenants, stipulations, and restrictions. Shortly thereafter, her two minor grandchildren began residing with her in WCS. In 2017, Garcia signed another "Age Certificate";

2

however, rather than certifying that no one under the age of eighteen resided on the premises, she wrote "exceptional hardship."

In August 2017, WCS informed Garcia, in writing, that WCS's declaration did not permit minors living on the property and that she had thirty days to cure the violation. Garcia filed a complaint with the Texas Workforce Commission (TWC) for housing discrimination, claiming she was being treated differently than other residents "because of the presence of children under the age of [eighteen] in her household." Following an investigation, TWC found that 189 residents live in WCS, that all residents confirmed that at least one occupant was over the age of fifty-five, and that no children under the age of eighteen resided with them in WCS. Therefore, TWC determined that WCS "did not impose such a term or condition on similarly situated tenants not of [Garcia's] protected class," and it closed Garcia's complaint.

## A.     WCS Files Suit

On April 16, 2018, WCS informed Garcia that she was still in violation of the Minors Rule and provided her with thirty days to cure the violation or to request a hearing before its board of directors. On January 8, 2019, WCS filed suit against Garcia seeking an injunction to restrain Garcia from permitting minors on the property for more than thirty days and seeking attorney's fees.

## B.     Garcia's Countersuit

Garcia filed a general denial and a countersuit against WCS. In her countersuit, Garcia stated her grandchildren's mother was murdered and Garcia became the guardian of the children. She alleged that WCS's suit constituted discrimination, which was

prohibited by the Texas Fair Housing Act (TFHA). *See* TEX. PROP. CODE ANN. § 301.021(a) ("A person may not . . . in any . . . manner make unavailable or deny a dwelling to another because of . . . familial status . . . ."). Garcia sought injunctive relief, damages, and attorney's fees. Garcia also filed a third-party petition against the individual appellees, asserting they were jointly and severally liable to her for damages because their conduct was negligent, grossly negligent, and malicious.

## C.     Appellees File Traditional Summary Judgment Motion

On July 15, 2020, appellees filed a joint traditional summary judgment motion regarding their claims and regarding Garcia's counterclaims. WCS argued it was entitled as a matter of law to a permanent injunction against Garcia to enjoin her from continuing to violate the Minors Rule. It further requested a dismissal of Garcia's counterclaims regarding housing discrimination, negligence, gross negligence, and tortious interference. The individual appellees asked the trial court to dismiss Garcia's counterclaims against them because there was no evidence that they engaged in wrongful conduct and that they did not owe Garcia an independent duty of care. Appellees attached the following evidence to their joint motion for summary judgment: (1) the affidavit of Duane Daley, a member of WCS's board of directors; (2) WCS's original declaration; (3) the amendments; (4) Garcia's warranty deed; (5) Garcia's 2015 and 2017 age certifications; (6) correspondence from WCS to Garcia informing her of the violation; (7) Garcia's TWC's complaint; (8) TWC's denial of Garcia's complaint and finding of "no reasonable cause"; (9) Garcia's responses to request for admissions; (10) Garcia's power of attorney and affidavit of guardianship; and (11) affidavits from appellees.

4

**D.      Individual Appellees File a No-Evidence Summary Judgment Motion**

The individual appellees additionally filed a no-evidence summary judgment motion on Garcia's counterclaims for civil conspiracy, negligence, and gross negligence. They asserted there was no evidence that they owed a legal duty to Garcia or that they breached that duty. They further sought attorney's fees.

**E.      Garcia's Response**

Garcia responded to the summary judgment motions, asserting the Minors Rule was ineffective because WCS's declaration was not subject to amendment before 2006. She objected to WCS's summary judgment evidence, asserting the affiants presented "no adequate evidence to support a finding of personal knowledge" regarding the matters set forth therein. Furthermore, Garcia attached her counsel's affidavit which she claims raised a fact issue regarding the reasonableness of attorney's fees sought by appellees. The trial court did not rule on these objections before it entered summary judgment.

**F.      Appellees' Response**

On September 21, 2020, appellees filed objections and a motion to strike Garcia's summary judgment evidence. The trial court did not rule on this motion. They further replied to Garcia's response to their motions for summary judgment, contending that the language in the declaration allowed for amendment prior to 2006 as long as the amendment was recorded and signed and agreed to by at least seventy-five percent of the then owners. Appellees attached a "certificate of corporate action" amending the declarations, adopting the Minors Rule, and signed and attested to by WCS's president and secretary in the year 1992. The certificate recites that the amendment "was approved

by in excess of 75% of the lot owners of [WCS]."

## G.    Ruling

The trial court granted appellees' motions for summary judgment. The trial court entered a judgment in favor of appellees on their claim to enforce the Minors Rule, a take-nothing judgment on Garcia's counterclaims against WCS, and a take-nothing judgment on her counterclaims against the individual appellees. The judgment permanently enjoined Garcia from violating the Minors Rule. The trial court further awarded attorney's fees in the amount of $41,157 to appellees and additional attorney's fees in the amount of $10,983 to Solberg.[1] *See id.* § 209.008(a) (providing that a "property owners' association may collect reimbursement of reasonable attorney's fees and other reasonable costs incurred by the association relating to collecting amounts, including damages, due the association for enforcing restrictions or the bylaws"). Garcia appealed.[2]

## II.    OBJECTIONS

First, Garcia argues the trial court erred by sustaining appellees' objections to her summary judgment evidence. Without getting into the merits of her first issue and for the purposes of this memorandum opinion, we consider Garcia's summary judgment evidence in our summary judgment analysis.

By her second issue, Garcia argues that the trial court erred in overruling her

---

[1] Solberg is the only individual appellee that substituted counsel and retained a different attorney during litigation. Thus, when we address the issue of attorney's fees, we distinguish Solberg from the remaining individual appellees.

[2] Daley and several other WCS board members were added as defendants in Garcia's third amended third-party petition, dated December 9, 2020. In a separate order, the trial court severed the claims made against these new defendants, and they are not parties to this appeal.

objections to appellees' summary judgment evidence. Garcia made eleven objections on the grounds that Daley lacked "personal knowledge" of the matters he attested to in his affidavit. Appellees assert that Garcia failed to adequately brief the issue and has failed to show how the alleged error was harmful.[3]

To constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence. TEX. R. CIV. P. 166a(f). The affidavit at issue here provides that Daley: (1) has been a member of WCS's board of directors, (2) is a resident of WCS; (3) testified as to his "capacity that [he] has personal knowledge of the matters described" therein; (4) has personal knowledge that "such facts and matters are all true and correct"; and (5) is "familiar with the manner in which [WCS]'s records are created and maintained by virtue of [his] duties and responsibilities" as a director. Thus, the context of the affidavit provides that Daley gave affidavit testimony as to his personal knowledge and represented what he believed to be true and correct facts. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 138 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("Regardless of whether GMAC's objections were to form or substance, it is clear from the context of the affidavit that [the affiants] gave affidavit testimony as to their personal knowledge and represented what they believed to be the true and correct facts."); *Bunker*

---

[3] We note that the trial court did not rule on Garcia's objections before it rendered a final judgment. While "objections to the substance of an affidavit may be raised for the first time on appeal," *Yancy v. United Surgical Partners Int'l, Inc.*, 170 S.W.3d 185, 191 (Tex. App.—Dallas 2005), *aff'd*, 236 S.W.3d 778 (Tex. 2007), "defects in the form of summary judgment affidavits cannot constitute the basis for affirming summary judgment unless the party seeking to rely on such defects objects to those defects in the trial court and obtains a ruling from the trial court or objects to the trial court's refusal to rule." *Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 101 (Tex. App.—Dallas 2010, pet. denied). Because the summary judgment evidence was proper, we need not determine whether Garcia's objections were of form or substance. *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 138 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.).

*v. Landstar Ligon, Inc.*, 136 S.W.3d 372, 376 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (providing that the affidavit demonstrated the basis of the affiant's personal knowledge based upon the affiant's position). Accordingly, we conclude Daley's affidavit was proper summary judgment evidence, and we overrule Garcia's second issue. *See id.*

### III.  SUMMARY JUDGMENTS

By issues three through six, Garcia argues that the trial court erred by granting appellees' motions for summary judgments relating to their claims against her and relating to counterclaims.

### A.  Standard of Review

We review summary judgments de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020). A party may move for a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). "To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

To be entitled to traditional summary judgment, a movant must establish there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130

8

(Tex. 2018). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Id.* Evidence is conclusive only if reasonable people could not differ in their conclusions. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017); *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). "[W]e must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *see Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).

## B.    Appellees' Claims Against Garcia

In their motions for summary judgment, appellees asserted they were entitled to summary judgment on their request for permanent injunctive relief against Garcia because there is no genuine issue of material fact that: (1) the Minors Rule complies with the TFHA and does not discriminate based on familial status; (2) the declaration was validly amended prior to 2006, which makes the Minors Rule enforceable; and (3) alternatively, assuming the declaration was not validly amended prior to 2006, the Minors Rule is nonetheless effective pursuant to § 209.0041 of the property code. In her response, Garcia asserted: (1) the declaration was not properly amended prior to 2006; and (2) § 209.0041 does not apply retroactively. She therefore claimed that appellees

have not proven they are entitled to take-nothing summary judgments with respect to her counterclaims.

### 1. Section 209.0041 Allows Amendments

Section 209.0041(h) of the property code provides that a declaration of a property owners' association "may be amended only by a vote of 67 percent of the total votes allocated to property owners entitled to vote on the amendment of the declaration." Tex. Prop. Code Ann. § 209.0041(h). WCS provided evidence that the 1992 amendment was adopted by at least 75% of WCS residents, and that the amendment was filed in the property records. Accordingly, the burden shifted to Garcia to raise a fact issue challenging its validity. *See Lujan*, 555 S.W.3d at 79.

Garcia argues that § 209.0041, which was enacted in 2011, does not apply retroactively to the 1992 amendments. However, § 209.0041 "applies to a dedicatory instrument regardless of the date on which the dedicatory instrument was created," and "supersedes any contrary requirement in a dedicatory instrument." *Id.* § 209.0041(e), (f); *see W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 223–25 & n.5. (Tex. App.—El Paso 2017, no pet.) (applying § 209.0041 retroactively to a 1986 amendment affecting the original restrictive covenants). Therefore, even assuming the declaration was not subject to amendment prior to 2006 by its own terms, § 209.0041 allows for adoption of amendments to dedicatory instruments at any time, as long as the 67% voting threshold is surpassed, and overrides any contrary language in WCS's declaration. *See* Tex. Prop. Code Ann. § 209.0041(e), (f); *W. Hills Harbor Owners Ass'n*, 516 S.W.3d at 223–25; *see also In re M.C.C.*, 187 S.W.3d 383, 384 (Tex. 2006) (per curiam) (explaining that statutes

10

are "applied retroactively if the statutory language indicates that the Legislature intended that the statute be retroactive"). Accordingly, we conclude the adoption of the Minors Rule is valid, and Garcia failed to raise a fact issue challenging its validity.

### 2. Section 301.043 Exempts WCS

We next determine whether the Minors Rule violates TFHA such that it is unenforceable. TFHA prohibits discrimination in the sale or rental of a dwelling to another because of familial status. *See* TEX. PROP. CODE ANN. § 301.021(a), (b). A discriminatory act is committed because of familial status if the act is committed because the person subject to discrimination is "domiciled with an individual younger than 18 years of age" and the person "is the parent or legal custodian" or "has the written permission of the parent or legal custodian for domicile with that person." *Id.* § 301.004(2). However, § 301.043, entitled "Housing for Elderly Exempted," specifically exempts housing "intended and operated for occupancy by at least one individual 55 years of age or older," such as WCS, from the provisions "relating to familial status." *Id.* § 301.043(3). As a fifty-five years of age or older community, WCS is exempt from complying with familial status pursuant to § 301.043. *See id.* Therefore, WCS proved as a matter of law that it is exempt from complying with the familial status rule, and the burden shifted to Garcia to raise a fact issue as to whether WCS violated the TFHA. *See* TEX. R. CIV. P. 166a(c).

Garcia did not address the "Housing for Elderly Exemption" in her response to appellees' motions for summary judgment. *See id.* (providing that any issues that a nonmovant contends avoid summary judgment must be expressed in a written motion, answer, or other response to the motion); *see also Madeksho v. Abraham, Watkins,*

11

*Nichols & Friend*, 57 S.W.3d 448, 453 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion."). Instead, Garcia merely reiterated that the Minors Rule is ineffective because the declaration was not subject to amendment prior to 2006. Because Garcia did not address § 301.043's Housing for Elderly Exemption in her response to WCS's motions for summary judgment, we conclude she failed to raise a fact issue regarding appellees' claims. Therefore, the trial court properly granted appellees' summary judgment motions relating to their claims against Garcia.

## C.     Garcia's Counterclaims

Appellees further asserted they were entitled to summary judgment on Garcia's counterclaims for housing discrimination, negligence and gross negligence, and tortious interference because those claims were contingent on WCS having committed a discriminatory act, which appellees disproved. *See Tello v. Bank One, N.A.*, 218 S.W.3d 109, 113 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("A plaintiff asserting a traditional motion for summary judgment in opposition to a defendant's counterclaim must disprove at least one essential element of the counterclaim as a matter of law."). Here, we found that appellees did not commit a discriminatory act as alleged in Garcia's counterclaims; thus, the burden shifted to Garcia to raise a fact issue. *See id.* at 114. However, Garcia merely reiterated that the Minors Rule was invalid, an argument which we have already rejected. Accordingly, Garcia failed to raise a question of fact regarding these claims, and the trial court properly granted traditional summary judgment on Garcia's counterclaims. We overrule issues three through six.

12

**D.     Attorney's Fees**

By her last issue, Garcia asserts the award of attorney's fees was improper because the individual appellees and Solberg "filed inconsistent testimony" regarding attorney's fees and because her counsel's affidavit created genuine issues of material fact. *See AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 338 (Tex. App.—Texarkana 1999, no pet.) ("[A] summary judgment award of attorney's fees is improper where the nonmovant produces a controverting affidavit regarding fees.").

**1.     Appellees' Attorney's Fees**

In his affidavit, counsel for appellees explained that appellees incurred attorney's fees in the amount of $41,157. His affidavit set forth his qualifications and his opinion regarding reasonable attorney's fees and the basis for such opinion. *See Enell Corp. v. Longoria*, 834 S.W.2d 132, 135 (Tex. App.—San Antonio 1992, writ denied) (providing that an affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted). Therefore, the burden shifted to Garcia to raise a fact issue regarding the reasonableness of these fees. *See id.*

Garcia's counsel filed an affidavit in an effort to controvert appellees' summary judgment proof. According to Garcia, on June 19, 2020, WCS sought $44,533.72 in attorney's fees, but on July 15, 2020, WCS sought a lesser amount. Garcia's counsel criticized this "reduction," stating that "with more proceedings in this case" and a reduction in fees, there is "likely something wrong with the manner" in which WCS is calculating such fees.

13

Garcia does not direct us to any portion of the record evidencing a request by appellees for $44,533.72 in attorney's fees, and we find none. *See* TEX. R. APP. P. 38.1(i) (requiring that briefs "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Conversely, the record provides that appellees requested attorney's fees in the amount of $41,157, and counsel's fifty-five-page detailed invoice describes each service, the date the service was practiced, the hourly rate, a synopsis of the service, and costs accordingly. *See Enell*, 834 S.W.2d at 135. Therefore, we overrule Garcia's last issue with regards to the trial court's award of attorney's fees in the amount of $41,157.

### 2. Solberg's Attorney's Fees

Solberg requested attorney's fees in the amount of $10,983.00, which the trial court granted. According to Garcia, the trial court's award was improper because Solberg's evidence in support of said amount was inconsistent.

In her affidavit, Solberg's trial counsel testified that she spent "at least 63.30 hours defending this suit" plus an "additional 7.1 hours in June 2020 working on" the summary judgment motions with a billing rate of $195 per hour. The amount incurred for 70.4 hours at that rate is $13,728.00, not $10,983. As an exhibit to her affidavit, counsel submitted a ten-page detailed invoice setting forth the reasonableness and necessity of the fees incurred, the hours spent on the case, and her experience. *See Enell*, 834 S.W.2d 135. However, the invoice attached to counsel's affidavit reflects a "timekeeper summary" of only 49.40 hours at a rate of $195 per hour for a total amount of $9,633.00.[4] Thus, the

---

[4] Additionally, counsel included legal assistant fees in the amount of $80.00.

record provides that: (1) Solberg requested attorney's fees in the amount of $10,983.00, which the trial court granted; (2) counsel testified that she incurred fees in the amount of $13,728; and (3) counsel's documentary evidence reflects incurred attorney's fees in the amount of $9,633.00. Taking as true all evidence favorable to Garcia and resolving any doubts in in her favor as we must, based on this record, we conclude there is a fact issue as to the proper amount of attorney's fees owed to Solberg. *See Bush Oak*, 601 S.W.3d at 646. Accordingly, we sustain Garcia's last issue as it relates to the trial court's award of attorney's fees to Solberg in the amount of $10,983.

## IV. CONCLUSION

We reverse only the portion of the judgment awarding Solberg attorney's fees in the amount of $10,983, and we remand that issue to the trial court for proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

JAIME TIJERINA
Justice

Delivered and filed on the
20th day of October, 2022.

15